Ftjld, J.
Mary Burke was seriously injured on a May day in 1950 as a result of a fall. While crossing Melrose Avenue, in the Borough of The Bronx, City of New York, she caught her foot in a hole under the rail of a trolley track and fell to the pavement. At that time, the tracks were not being used, buses run by the Third Avenue Transit Corporation having replaced the street cars previously operated by a predecessor company. Alleging negligent maintenance of the pavement in and about the track area, Mrs. Burke brought this action against both the City of New York and the trustees in reorganization of the transit company. The trial court — a jury having been waived — found in plaintiff’s favor for $20,000 against both defendants and granted judgment over in favor of the city, on its cross complaint, against the trustees, and the Appellate Division affirmed.
On this appeal, no one challenges plaintiff’s right to a judgment against both defendants for the damages she suffered, but the company does dispute the municipality’s right to recover over against it. We agree with the position advanced by the city; the company is obligated to indemnify it for all claims for damage occasioned by the company’s negligent maintenance of the pavement within the track area.
By a contract agreement made with the company’s predecessor in November of 1940, the city permitted the contracting company to substitute buses for street cars, and, in consideration of the city’s allowing it to delay removal of its tracks until the city repaved the streets, the company covenanted that it would continue “ to repair the existing pavement within the said railroad area so long as its tracks remain in such part of such street” (Contract, art. 13, § 2).[1] That agreement, as *93 we have already intimated, rendered the company liable to the city for all damages arising from the company’s failure to keep the track area in good repair. (See City of Brooklyn v. Brooklyn City R. R. Co., 47 N. Y. 475; see, also, Schuster v. Forty-second St., M. & St. N. Ave. Ry. Co., 192 N. Y. 403, 409; City of Rochester v. Campbell, 123 N. Y. 405, 411.)
In the City of Brooklyn case (supra, 47 N. Y. 475), the municipality sued the street railroad company to recover the amount of a judgment which had been obtained against it by one injured because of the presence of a hole in the line of the company’s tracks. Although the company had agreed, in a bond which it had furnished the city, simply to keep the track area in repair, the court sustained the city’s right to indemnification, declaring that the company, by the covenant to repair, “ in effect contracts to perform that duty to the public in the place and stead of the municipality ” (47 N .Y., at p. 485) and that, when someone is injured through the negligent maintenance of the track area, the company is ‘ ‘ answerable ’ ’ to the city for any damages which the latter may be called upon to pay (p. 486). And, addressing itself to one of the very arguments made by the company in this case, namely, that the city could not prevail since it was allegedly a joint wrongdoer, in pari delicto with the company, the court said that, “ As between the parties, the plaintiff [city] having taken from the defendant [railroad company] a covenant to do that which, if it had been done as agreed, no harm would have befallen, had a right to rely thereon; and, though liable to third persons, are not so in pari delicto with the defendant as to be unable to sue and recover over ” (pp. 486-487).
Some years later, in the course of its opinion in Schuster (supra, 192 N. Y. 403, 409), the court pointed out that in City of Brooklyn (supra, 47 N. Y. 475) it had held that, “ where one contracts with a municipal corporation to keep any portion of its streets in repair, in consideration of a license to use them to his benefit in an especial manner, he in effect contracts to perform that duty to the public, in the place and stead of the municipality * * * so that they [the streets] may be safe for the passage of the public”. And, the court continued, “ the contractor is liable for any damages which naturally and proximately fall upon the [municipal] corporation in consequence of the duty not being performed.” Even in the case *94 relied upon for reversal, City of Rochester v. Campbell (supra, 123 N. Y. 405), the court reasserted as “ being too well settled to require argument or citation” the proposition that, “if the municipality has provided by contract with third persons for keeping its street in repair, and has been, through a neglect by such party to perform his contract, subjected to damages at the suit of an injured party, it may recover from such party the sum which it has thus been compelled to pay ” (p. 411).
In the light of these decisions, it is clear that an agreement to keep the track area in repair, whether or no it contains explicit language of indemnity,[2] carries with it an obligation to indemnify the city for damages resulting from the company’s failure to perform its undertaking and discharge its duty. And, once the municipality’s right to indemnification is recognized, it obviously matters not whether the city chooses to assert its right by a suit separately brought against the railway company, as in City of Brooklyn (supra, 47 N. Y. 475), or, as here, by a cross complaint in the original action instituted by the injured person. (See, e.g., Dudar v. Milef Realty Corp., 258 N. Y. 415; City of Fort Worth v. Allen, 10 Tex. Civ. App. 488.)
Although we might well conclude at this point, it is not inappropriate to indicate that a somewhat different approach leads to the same result. By a further provision of the 1940 contract (art. 13, § 8), the company agreed that, after it ceased running street cars, it would “ remain as fully liable for any and all claims for damage to persons and property occasioned by, or growing out of, the presence of its tracks * •* * as it would have been with respect thereto prior to such cessation.” (Emphasis supplied.) Defining the company’s responsibility in this way, that is, in terms of liability ; prior to * * * cessation ” of the operation of its railway, was but another way of expressing the thought and understanding of the parties that the company was to remain liable to the city as an indemnitor.
The company’s liability, during the time that it was running trolleys, was fixed by section 178 of the Eailroad Law. This section imposed upon every street railway company the duty *95 to “ keep in. permanent repair that portion of [the] street * * * between its tracks, the rails of its tracks, and two feet in width outside of its tracks ” as long as “it shall continue to use or maintain ” them. Such language is almost identical with the language contained in the bond which was before the court in City of Brooklyn v. Brooklyn City R. R. Co. (supra, 47 N. Y. 475) and, since it was there decided that the railroad company was liable to the city for any damages resulting from the company’s failure to keep the street in repair, it could hardly have been the legislative purpose to eliminate the city’s previously recognized right to recover over. On the contrary, as we had occasion to observe in the later Schuster case (supra, 192 N. Y. 403, 408), the statute was “ doubtless ” designed “ to take the place in the future of the contracts that had theretofore been entered into * * * by municipal corporations with street railroads ” and to impose upon the railroads the same liability as had previously resulted from those contracts. In other words, the legislature, by enacting the provision in question, simply wrote the contract, along with its settled construction, into the law.
In conclusion, then, the city, though under a nondelegable duty to maintain its streets in good condition, ever liable to third persons, was privileged to exact from the railway company an undertaking that it would assume that duty itself. Since the company failed to perform it, and since the damages awarded to the plaintiff were directly ascribable to such failure, the courts below very properly held that the city was entitled to judgment granting recovery over on its cross complaint.
The judgment appealed from should be affirmed, with costs.

. The term “railroad area” was defined as “the space between the tracks * * * the rails of such tracks and two feet in width outside of such tracks ” (Contract, art. 13, § 1).

. While, therefore, the absence of such verbiage would not be important, we note that there is a recital in the contract before us (art. 13, § 8) — that the company shall be “liable for any and all claims for damage to persons and property occasioned by * * * the presence of its tracks ” in the street — which definitely sounds in indemnity.