**Arlander PETTY, Plaintiff,**

v.

**NEW YORK CENTRAL RAILROAD n/k/a Penn Central Transportation Company and Clark Equipment Company, Defendants.**

**No. 66 Civ. 786.**

United States District Court, S. D. New York.

July 17, 1970.

Norman Roy Grutman, New York City, Trial Counsel, for plaintiff.

Fogarty & Nielsen, New York City, for Clark Equipment Co.; Tidal B. Henry, Jr., New York City, of counsel.

Thomas J. Smith, New York City, for Penn Central Transportation Co.; Henry W. Herbert, New York City, of counsel.

## MEMORANDUM

CROAKE, District Judge.

On November 25, 1964, Arlander Petty, the plaintiff herein, was injured while working as an employee of defendant New York Central Railroad (hereinafter the Railroad) as a fork lift machine operator when the boom of such a machine which he was operating collapsed upon him.[1] Plaintiff thereafter brought this action for damages under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq., against the Railroad.[2] A jury trial was held before the undersigned and the issue of liability was tried first. At the end of plaintiff's case on the trial of the liability issue, however the Railroad conceded liability and withdrew its claim that the plaintiff was guilty of contributory negligence. This concession and withdrawal of the defense of contributory negligence were not acquiesced in by defendant Clark. However, pursuant to the concession and withdrawal, verdict was directed at that point by the undersigned in favor of plaintiff Petty

---

1. Following the accident, it was determined by an inspection of the machine that there were several defective trunnion caps and bolts and worn wear strips on the machine. The evidence at the trial tended to show that these defects caused the collapse of the machine upon plaintiff.

2. The action was also brought on the basis of diversity of citizenship against the Clark Equipment Company (hereinafter Clark) as the owner and lessor of the fork lift machine that collapsed. At the end of plaintiff's case, however, the claim against this defendant was discontinued.

against the Railroad as to plaintiff's lack of contributory negligence vis-a-vis the Railroad and as to the latter's liability to plaintiff. Upon the subsequent trial of the issue of damages, the jury [3] returned with a verdict for plaintiff against the Railroad of $125,000.

Presented to the undersigned at this point is the Railroad's cross-claim for indemnity against Clark. It was stipulated that the Court should decide this matter. Said cross-claim reads as follows:

> FIRST: At the time mentioned in Plaintiff's complaint, there was in force a Rental Agreement between Clark Equipment Company (lessor) and the New York Central Railroad Company (lessee) whereby the rights and obligations of the parties with respect to the upkeep and maintenance of certain equipment were set forth, which Agreement is annexed hereto as Exhibit "A."

> SECOND: By the terms of the aforesaid Agreement, particularly paragraph "Sixth" thereof, Clark Equipment Company agreed to maintain and service the equipment enumerated.

> THIRD: If the Plaintiff herein recovers a verdict against the Defendant, New York Central Railroad Company, for personal injuries as alleged in the complaint, such will have been brought about and caused primarily by the carelessness and negligence of the Defendant, Clark Equipment Company. * * *

The Rental Agreement between the Railroad and Clark reads in pertinent part as follows:

> FIFTH: LESSEE agrees to take good care of the equipment in the use, maintenance and storage thereof and, without limiting the foregoing, to use and operate the same within its rated capacity, to restrict the use and operation thereof to safe, careful and competent personnel selected, employed and controlled by LESSEE, to prohib-

it anyone other than duly authorized personnel of LESSOR to make any repairs or adjustments to the equipment (unless otherwise previously authorized, in writing, by LESSOR, * * *

> SIXTH: The equipment will be serviced and maintained in proper working condition by LESSOR, and LESSEE agrees to make the equipment available for servicing by the representatives of LESSOR at reasonable times during business hours. * * *

> EIGHTH: * * * LESSEE agrees to assume sole responsibility and liability for death or injury to any persons (including employees of lessee), and all damage to property resulting from, and to indemnify and hold lessor harmless against and from all claims, damages, expenses and loss arising out of, the use, operation, storage or maintenance, except maintenance performed by LESSOR, of the equipment during the term of this lease. * * *

▮ It is clear from the provisions of the contract that the lessor, Clark, had the responsibility of the maintenance in good working condition of the equipment leased by it to the Railroad, including the fork lift machine in question herein. Contrary to the position taken by Clark, there is no condition that Clark be given prior notice of the deficient condition of a particular machine before the obligation attaches to keep that machine in proper working condition. Likewise, although the Railroad, as lessee, assumes general responsibility for death or injury caused by the machine, still it is clear that in the case where damages result from the lessor's maintenance, the lessor bears the responsibility for the said damages.

The evidence adduced at the trial tends to show that Clark was in fact generally performing its maintenance responsibilities. Mr. Sciacchetano, the Railroad's agent at its Weehawken, New Jersey, installation, when called as a

---

3. The same jury that had heard the abortive trial of the issue of liability.

witness by plaintiff, testified that all mechanical maintenance on the leased machines was provided by Clark, not by the Railroad. It was undisputed that Clark had a mechanic, Mr. Hillman, on duty at Weehawken five or six days a week from eight to ten hours a day. Mr. Hillman testified that it was his duty to maintain the machines, keeping them in operating condition. He further testified that all machines were stored in his work area, except for those which broke down on the job and were not yet brought in. He stated that he was generally the only one who serviced the machines, although he had help at times from part-time employees. Mr. Hillman acknowledged that he did not have the chance periodically to inspect the fleet and was unable generally to keep the machines in proper working order because of inadequate help. It appeared also that in addition to Mr. Hillman, Mr. Richard Collins of Clark had occasion to be at the Railroad's Weehawken yard at least twice a week with the responsibility to make sure the equipment was running in proper condition and to check up on Mr. Hillman's work. Mr. Collins indicated that he was familiar with the Weehawken installation, with the area where the leased machines were used, and with the type of operation involved. He testified that he knew that from time to time trunnion caps or bolts were missing from machines and that bolts missing from trunnion caps represented a danger to a user of a machine.

However, despite such knowledge, Clark never established any system whereby machines were inspected on a periodical basis. According to Mr. Collins, inspection or servicing of trunnion caps was only done on occasion. Machines were generally inspected by Clark only when they were repaired or, as Mr. Hillman testified, only in the event somebody made a complaint about a machine's not operating satisfactorily. Mr.

Collins testified that an inspection of the machine involved in this suit shortly before the accident would have revealed some bolts missing and sheared and some worn wear strips. He indicated that his inspection, made immediately following the accident, showed that the sheared bolt looked "like it was sheared-off for quite some time," that other bolts appeared to have been "missing for quite some time," and that the wear strips of the machine "similarly appeared to have been worn for some time." (C. p. 15, 1. 5–24).

■ Accordingly, from the facts proven at trial, it is clear that Clark breached its obligations of servicing and maintaining the fork lift machine in question in proper working condition. It was dangerous and defective, clearly unfit for its intended purpose when plaintiff used it on November 25, 1964.

■ It is clear that an agreement to maintain and repair carries with it an obligation to indemnify against breach thereof. Burke v. City of New York, 2 N.Y.2d 90, 157 N.Y.S.2d 1, 138 N.E.2d 332 (1956); Witz v. Cadillac Hotel, Inc., 26 A.D.2d 763, 271 N.Y.S.2d 686 (1966), aff'd 19 N.Y.2d 824, 280 N.Y.S.2d 391, 227 N.E.2d 308 (1967). Accordingly, in the instant case the Railroad was entitled to rely upon Clark to perform its contractual obligation to service, repair and maintain the leased machines in proper working order. The agreement renders Clark liable to the Railroad for all damages flowing from Clark's breach.[4]

■ Clark, as well as denying breach of its obligation to maintain, relies on a theory of rental abuse. However, evidence of sufficient cogency in support of this theory was not advanced. Our consideration of the testimony convinces us that Clark fails on both of these asserted theories.

Thus, under the provisions of the Rental Contract, Clark, as lessor, is responsi-

4. Because of our conclusion on this issue, we do not reach the other theories on which the Railroad relies.

ble for the damages resultant from its deficient maintenance, namely, plaintiff's injuries sustained by the collapse of the machine on him.

Accordingly, the Railroad's cross-claim against Clark is granted in its entirety.

So ordered.