CHARLES TEMPLETON, Plaintiff-Appellee, *v.* BLAW-KNOX COMPANY *et al.*, Defendants and Third-Party Plaintiffs-Appellants.—(WESTINGHOUSE ELECTRIC CORPORATION *et al.*, Third-Party Defendants-Appellees.)

Third District   No. 76-27

Opinion filed June 30, 1977.

Robert F. Russell, of Johnson, Martin & Russell, of Princeton, for appellants.

Elliot R. Schiff and Marvin Riman, both of Sweeney & Riman, of Chicago, for appellees.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

Charles Templeton, an employee of Jones & Laughlin Steel Corporation (hereafter called J & L), sustained injuries when he was pulled through the rollers of a steel processing machine. He filed a complaint for personal injury against Blaw-Knox Company (hereafter called B-K), the manufacturer of the machine, alleging that B-K designed, manufactured and sold a machine which lacked adequate safety devices, warnings and instructions, which was sold to J & L. B-K thereafter filed an amended third-party complaint for indemnity against Westinghouse Electric Corporation and J & L containing six counts based on negligence and strict liability in tort.

Specifically, B-K alleged that J & L designed the machine, including all safety features, closely supervised its construction and installation, and controlled the use of the product in its business. B-K also alleged that Westinghouse was actively and primarily liable for manufacturing the specific machine that injured Templeton. Westinghouse and J & L each filed a motion to dismiss the third-party complaint. Although both motions were granted, B-K has appealed only from the order granting J & L's motion to dismiss, and it abandoned its negligence theory of indemnity during oral argument of this appeal. Therefore, the sole issue before us is whether the trial court correctly dismissed B-K's third-party complaint against J & L for indemnity based on strict liability in tort.

■■ Third-party practice in Illinois is governed by section 25 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 25). Section 25(2) provides in part that:

> "Within the time for filing his answer or thereafter by leave of court, a defendant may by third-party complaint bring in as a defendant a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him."

However, in order for the third-party complaint to withstand a motion to dismiss, it must allege some relationship between the third-party plaintiff and third-party defendant sufficient to warrant application of indemnity principles. *Muhlbauer v. Kruzel* (1968), 39 Ill. 2d 226, 234 N.E.2d 790; see *Burke v. Sky Climber, Inc.* (1974), 57 Ill. 2d '542, 316 N.E.2d 516.

The doctrine of strict liability in tort as applied to products liability cases originated in 1963 with the case of *Greenman v. Yuba Power Products, Inc.* (1963), 59 Cal. 2d 57, 377 P.2d 897, 27 Cal. Rptr. 697, and was adopted by Illinois in 1965 with the supreme court's decision in *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182. Although the doctrine is of recent origin, there have been a great number of cases litigated under it involving the issue of indemnity. Given the purpose of strict liability to place the loss caused by defective products on those who create the risk and reap the profits (*Peterson v. Lou Bachrodt Chevrolet Co.* (1975), 61 Ill. 2d 17, 329 N.E.2d 785), it should not be surprising that the vast majority of these cases have rejected manufacturers' claims for indemnity against other parties in the distributive chain.

At the same time, analysis of these cases also reveals that in the great majority of them the manufacturer failed to establish any relationship between itself and its user which would warrant indemnification. *Stevens v. Silver Manufacturing Co.* (2d Dist. 1976), 41 Ill. App. 3d 483, 355 N.E.2d 145, appeal allowed, and *Burke v. Sky Climber, Inc.* (1974), 57 Ill. 2d 542, 316 N.E.2d 516, typify these cases. In *Stevens*, the manufacturer

of a shredding machine settled a products liability claim with the plaintiff and then sued the plaintiff's employer for indemnity. The basis for the manufacturer's claim was that the employer negligently failed to supervise or instruct its employees in the use of the machine and had allowed a handicapped person to operate it. In ruling that the trial court should have dismissed the third-party complaint, the appellate court stated:

> "The third-party plaintiffs contend that they should be able to obtain indemnification because, as they allege, their liability was created by the acts of the employer. But before the third-party plaintiffs can be exposed to liability by the actions of the third-party defendant, some relationship or circumstance must be shown giving rise to derivative or vicarious liability [citation]. There was no such relationship here. Neither the manufacturer nor the seller could have been held liable for the employer's tortious actions towards his employees; they could only be liable for a dereliction of a duty that they owed to the public." 41 Ill. App. 3d 483, 489, 355 N.E.2d at 151.

Similarly in *Burke,* a scaffold manufacturer sought indemnity from the employer of an injured workman on the basis that the employer's active wrongdoing and negligence were responsible for the accident. Unlike *Stevens, Burke* involved a third-party complaint which was dismissed by the trial court. Noting that the plaintiff's complaint alleged the defendant's negligent design, manufacture, assemblage and distribution of a defective product, the supreme court stated that a third-party complaint will be dismissed if it does not state a cause of action and affirmed the trial court, concluding:

> " '[A] third-party complaint must disclose some relationship upon which a duty to indemnify may be predicated.' " (57 Ill. 2d 542, 546, 316 N.E.2d at 519.)

Where the sufficiency of the third-party complaint is challenged, as was the case in *Burke* and *Stevens,* it is primarily the existence or nonexistence of a relationship between the third-party plaintiff and defendant which will determine the pleadings issue. (See 64 Ill. B.J. 344 (1976).) Typically, when an indemnity issue is decided on its merits the manufacturer is denied relief because public policy ultimately places the loss on the creator of the risk.

Here B-K's third-party complaint alleged that J & L designed, supervised the construction of, and installed the steel processing machine which injured Templeton. In effect, B-K's position is that it did not create the risk. We cannot accept this contention. Even if the allegations of the third-party complaint, which are admitted by J & L's motion to dismiss,

are sufficient to establish a relationship between the parties, other factors are present in this case which justify the order granting J & L's motion to dismiss.

In the recent case of *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 338 N.E.2d 857, an insurance company, as subrogee for its insured, a manufacturer, sought indemnity from the manufacturer of a component part. In this case an adjustable work platform collapsed because of a defective pump which was manufactured by the defendant and installed onto the platform without alteration by the plaintiff's insured. The defendant failed to preset a relief valve within the pump, thereby allowing excess pressure to build up on the piston rods until the strain caused the entire structure to collapse. The supreme court, while affirming the award of indemnity here, announced the rule that:

> "[I]ndemnity here and elsewhere in the chain of distribution is not available to one whose conduct in connection with the product may be said to constitute a misuse of it *or an assumption of the risk of its use.*" (Emphasis added.) (62 Ill. 2d 77, 83, 338 N.E.2d 857, 860.)

The court then ruled that the insured did not assume the risk of a defective product since it was unaware of any defect in the relief valve.

*Burke, Stevens* and *Liberty Mutual,* in denying indemnity in product situations where the user of the product has allegedly misused it, established the idea that the manufacturer who is strictly liable in tort for his placement of a defective product into the stream of commerce may not have indemnity. See 65 Ill. B.J. 448 (1977).

■■ Unlike *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.,* where the injuries resulted from a defective part, the injuries here allegedly resulted from a defective design. Taking the allegations of the third-party complaint as true, it appears that J & L designed the machine and closely supervised B-K in every step of its construction. Nevertheless, B-K actually manufactured the machine, and under such circumstances B-K was or ought to have been aware of all potential dangers inherent in the design it utilized. Accordingly, B-K assumed the risk of manufacturing a defectively designed product, and was not entitled to indemnity from J & L. Further, we think that even if B-K had not assumed the risk in this case, it could not shed its liability because the manufacturer has a nondelegable duty to provide a reasonably safe product. *Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 319 N.E.2d 232.

B-K's thoughtful and clearly presented attempt to third party the employer J & L and to establish "downstream" indemnity, which refers to actions brought by the manufacturer or other creator of the alleged defect against some third party outside the distributive chain, such as an

employer, cannot be underestimated. The fact that a party who creates the defect is insulated from liability by virtue of his status as an employer is unfortunate, but we believe the public policy and practical considerations previously discussed are outweighed by appellee's arguments.

Accordingly the judgment of the Circuit Court of La Salle County is therefore affirmed.

Affirmed.

BARRY and SCOTT, JJ., concur.