Paula H. ROY

v.

STAR CHOPPER COMPANY, INC.

v.

ADVANCED MATERIALS SYSTEMS, INC.

Civ. A. No. 74–16.

United States District Court,
D. Rhode Island.

Nov. 3, 1977.

Leonard Decof, Providence, R. I., for plaintiff.

Raymond A. LaFazia, Providence, R. I., for Star Chopper.

Harry W. Asquith, Providence, R. I., for Advanced Materials.

## MEMORANDUM

PETTINE, Chief Judge.

This Memorandum is published in further amplification of the Court's Order dated October 4, 1977, denying the third party defendant's motion for summary judgment on the issue of indemnity.

Paula Roy, a Massachusetts citizen, brought this suit against Star Chopper Company, Inc., a Rhode Island corporation, for injuries allegedly sustained in operating a machine manufactured by Star Chopper for Advanced Materials Systems, Inc. ("AMS"), a Rhode Island corporation with its place of business in Massachusetts. Plaintiff Roy contended that Defendant Star Chopper failed to include safety devices and proper warnings. Plaintiff Roy sought damages based on strict liability and breach of implied warranty. Defendant Star Chopper impleaded Plaintiff Roy's em-ployer, AMS.[1] The machine purchased by AMS was a "take-up" piece of equipment essentially constituted by two pinch rollers which pulled metal strips through a series of metal plating tanks and tank-like enclosures.

From the facts developed in the course of the trial the jury had to decide, if it first found Star Chopper liable to Plaintiff Paula Roy, whether or not AMS by words and deeds had undertaken sole responsibility for installing safety devices upon final assembly of the plating unit of which the machine in question was a part. If they did so find then, of course, AMS would be liable to Star Chopper for any judgment rendered against it on a theory of indemnity.[2]

It was not revealed to the jury that Paula Roy had received approximately $43,000 pursuant to the Massachusetts Workmens Compensation Act ("Act") M.G.L.A. C. 152 (1958). AMS contends that such award paid by AMS immunized it from claims for contribution and indemnity by Star Chopper.

Before commencement of trial, the Court read into the record a pre-trial Order. In that Order, the Court declared that Rhode Island substantive tort law would apply to the case in chief between plaintiff/employee Roy against defendant/manufacturer Star Chopper. The Court granted Third Party Defendant's motions for summary judgment with regard to Star Chopper's claim for contribution because of the immunity granted by the Massachusetts Act. The Court reserved ruling on Star Chopper's claim for indemnity until further facts were placed on the record.

Although unclear from the complaint, Star Chopper apparently bases its claim for indemnity on both a contractual and a non-contractual relationship between itself and Third Party Defendant. Star Chopper does not allege an express contract for indemnity; rather, the Court is urged to find that

---

1. AMS corporate officer, Ashok Hingorany, also impleaded, moved for direction in his favor upon completion of plaintiff's and third party plaintiff's case. His motion was granted for reasons not pertinent to this discussion. The Court also notes that in the course of the trial Plaintiff Roy dropped her allegations of negligence from the complaint.

2. The jury found for Plaintiff Paula Roy and for Third Party Defendant AMS.

Third Party Defendant has an implied obligation to indemnify Star Chopper arising from the peculiar nature of the transaction for sale of the machinery in question.

In the trial Star Chopper presented evidence tending to show a relationship between itself and AMS resembling more co-manufacturers than vendor/vendee. Star Chopper claimed that Third Party Defendant imposed design specifications for the take-up machine in question, designs that omitted safety devices. In addition, the owner of Star Chopper, Mr. George LeToile, testified that he inquired about safety devices. He stated that AMS' corporate officer, Mr. Hingorany, expressly represented that AMS would be responsible for addition of safety devices upon final assembly in the plant. Mr. Hingorany denied this. Finally, Star Chopper presented evidence that AMS was solely responsible for assembly of the plating unit of which this machine was a part. This accumulation of evidence suggested that an implied contract to indemnify may have existed between Star Chopper and AMS. For the reasons discussed, *infra*, the Court felt this was a vital issue for jury determination.

■ Quite apart from the sales transaction, Star Chopper alleges a non-contractual relationship with AMS that, absent a workmen's compensation act, would arguably give rise to an indemnity claim under traditional equitable indemnity principles. Traditionally, a party found liable without fault to an injured party can recover indemnity from the party whose negligence primarily or solely caused the injury. Star Chopper contends that it may be found liable to the Plaintiff without fault under a strict liability theory for injuries caused by the negligence of AMS. In that event, indemnity rather than contribution between joint tortfeasors would be the more appropriate claim. However, we need not determine if, indeed, Star Chopper has stated a valid claim for indemnity if the jury found Star Chopper liable without fault and AMS negligent since, for reasons set forth in this Memorandum, we hold that AMS is immunized against all non-contractual indemnity claims because it paid a compensation award under the Massachusetts Act.

Although we reject Star Chopper's claim that both contractual and non-contractual indemnity is available, we also reject AMS' contention that the Massachusetts Act immunizes it against both types of indemnity claims. Rather, the Court holds that Star Chopper can enforce an implied contract to indemnify even though AMS paid the injured employee, Paula Roy, a compensation award. The Court, therefore, granted Third Party Defendant AMS' Motion for Summary Judgment only with regard to claims for non-contractual indemnity. With regard to the implied contract for indemnity, the Court treated the original summary judgment motion in the nature of a motion for directed verdict at the close of Star Chopper's evidence. The Court refused to direct a verdict in favor of AMS and found as a matter of law that the evidence Star Chopper presented, if believed by the jury, gave rise to an implied contract to indemnify.

## I. Choice-of-Law Questions

■ As a preliminary matter, the Court must decide essentially two conflict-of-law issues. Because jurisdiction is based on diversity, the resolution of these questions depends on Rhode Island's choice-of-law rules. *Klaxon Co. v. Stentor Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Third Party Plaintiff, Star Chopper, is a Rhode Island corporation. Third Party Defendant is a Rhode Island corporation with its place of business in Massachusetts. The injury, the injured employee and the employment relationship occurred in Massachusetts. The immunity Third Party Defendants claim was, as we now hold, created by the Massachusetts Act. Obviously, the scope of that immunity is a question of Massachusetts law requiring interpretation of a Massachusetts statute. However, the Court must determine whether Rhode Island courts would enforce the immunity created under Massachusetts law against a Rhode Island corporation's indemnity claim. To decide this question, the

Court must first determine whether Rhode Island courts are required to give full faith and credit to the Massachusetts immunity. Even if they are not so required, the Court must apply Rhode Island conflict-of-law rules to determine whether Rhode Island courts would nonetheless enforce the Massachusetts immunity against indemnity claims urged by a Rhode Island corporation. The Court must also choose between Massachusetts and Rhode Island common law to decide a second question—whether Star Chopper has presented evidence sufficient to warrant a jury in finding that Third Party Defendants have an implied contractual obligation to indemnify Star Chopper.

One caveat to this discussion is necessary. Because of the silence of both states' legislatures and courts on the particular issues before us, the choice-of-law analysis is more an intellectual exercise than of practical significance. The Court has been forced to look outside both jurisdictions to develop satisfactory answers to the substantive issues in the case.

■■■ A forum state may refuse to give full faith and credit to a law of a sister state if to do so would offend the public policy of the forum state, *Woodward v. Stewart*, 104 R.I. 290, 295, 243 A.2d 917, 921 (1968). The forum state is not required by the full faith and credit clause to enforce the exclusive remedy provisions of a sister state's workmen's compensation statute. *Carroll v. Lanza*, 349 U.S. 408, 75 S.Ct. 804, 99 L.Ed. 1183 (1955). However, looking to what Rhode Island has done in tort questions we find the Rhode Island Supreme

Court recognized that to permit tort actions despite immunity provisions would seriously undermine the compensation scheme of the sister state, *Busby v. Perini Corp.*, 110 R.I. 49, 51, 290 A.2d 210, 211 (1972). Thus, in *Busby*, the Court followed the general principles of the Restatement (Second) of *Conflict of Laws* § 184, Comment b (1971) and enforced the immunity granted by the Massachusetts Act to the general contractor against suit by an injured employee of a subcontractor. The Massachusetts immunity was enforced in spite of the fact that, under the Rhode Island Workmen's Compensation Act, the general contractor would not be immune. In *Busby*, Rhode Island's only contact was at the locus of the work and injury; the parties were all Massachusetts citizens. By contrast, in the case before this Court, Rhode Island has a significant interest in protecting the indemnity rights of citizen corporations.[3] However, Rhode Island does not have an announced policy permitting enforcement of non-contractual indemnity claims against employers who have paid compensation awards. In fact, Rhode Island courts have not decided whether even Rhode Island's compensation statute permits non-contractual indemnity claims against employers.[4] Absent such a policy, we conclude that Rhode Island courts would give full faith and credit to the immunity the Massachusetts Act grants against non-contractual indemnity claims.

Application of the factors established by the Rhode Island Supreme Court for resolution of choice-of-law problems in tort cases generally support this conclusion, *Wood-*

---

**3.** The section of the Restatement commentary following that quoted by the *Busby* Court suggests that whether an otherwise immune employer must contribute or indemnify should be judged by the law applicable to the tort. Restatement, *supra*, comment c. A more sensible choice-of-law approach was adopted in a case similar to the one before this Court by the federal district court in Pennsylvania, *Haynes v. Atlantic Richfield Co.*, 325 F.Supp. 1308 (E.D.Pa.1971). That court looked to the law of the state whose workmen's compensation law was most significantly involved to determine the immunity from indemnity claims. Applying the same analysis in the instant case, clear-

ly Massachusetts—the locus of the injury, the resident state of both employee and employer—is the only appropriate law. *See Newport Air Park, Inc. v. United States*, 419 F.2d 342, 347 (1st Cir. 1969).

**4.** The courts have clearly held that employers have immunity from claims for contribution, *Rowe v. John C. Motter Printing Press Co.*, 273 F.Supp. 363 (D.R.I.1967), *Cacchillo v. H. Leach Machinery Co.*, 111 R.I. 593, 305 A.2d 541 (1973); but do not have immunity from claims for contractually-based indemnity, *Atella v. General Electric Co.*, 21 F.R.D. 372 (D.R.I. 1957).

*ward v. Stewart*, 104 R.I. 290, 243 A.2d 917 (1968). Because Rhode Island law is unsettled, applying the Massachusetts immunity provisions to bar non-contractual indemnity claims may or may not in fact further Rhode Island's "governmental interests." On the other hand, failure to enforce would certainly offend an important governmental interest of Massachusetts in maintaining the delicate balance between employee's rights and employer's liability. *Busby v. Perini, supra.* Thus, "interstate order" would indeed be jeopardized by refusal to enforce the Massachusetts immunity. Since Rhode Island corporations do not presently know what to expect under the local statute, no expectations with regard to liability insurance will be upset by application of Massachusetts law. More significantly, our interpretation of Massachusetts law permits the third party to protect himself against a Massachusetts employer's immunity from liability by contracting for indemnity. The Court is convinced that the balance of considerations is clearly weighted in favor of enforcing the immunity created under the Massachusetts Act against claims for indemnity urged by the Rhode Island corporation, Star Chopper. *See, e. g., Goodemote v. Mushroom Transportation Co., Inc.*, 427 F.2d 285 (3d Cir. 1970); *Pust v. Union Supply Co.*, 561 P.2d 355 (Colo.App.1976).

▇▇▇▇ Turning to the remaining conflict-of-law problem, the Court must choose between the law of Rhode Island or Massachusetts to control the final question of whether a valid indemnitor/indemnitee relationship exists between the parties. With regard to the claim for indemnity based on an implied obligation arising out of the sale of machinery, Rhode Island's conflict-of-law rules for contract cases should be followed. We conclude that Rhode Island courts would apply Rhode Island law to determine whether an implied obligation to indemnify exists. In *A. C. Beals Co. v. Rhode Island*

*Hospital*, 110 R.I. 275, 292 A.2d 865 (1972), the Rhode Island Supreme Court applied the law of the state with the most "significant interests" in the controversy over an arbitration agreement. In the instant case, a Rhode Island corporation located in Massachusetts placed an order with a Rhode Island corporation. Although the designs were drawn up in Massachusetts, the manufacture according to the designs occurred in Rhode Island. The contacts of both states for this crucial stage of the transaction are evenly balanced. However, since Rhode Island law governs the tort suit in the case in chief, we conclude that the balance of interests tips in favor of Rhode Island.[5] We are particularly persuaded by the fact that Rhode Island law imposes strict liability on the manufacturer, whereas Massachusetts law does not. Rhode Island's governmental interest in regulating the conduct of citizen businesses and its policy interest in holding them to a tougher liability standard may well go hand in hand with permitting citizen businesses to protect themselves from liability by indemnity contracts.

In sum, the Court concludes, one, that Rhode Island courts would enforce the immunity created by the Massachusetts Act against indemnity claims of a Rhode Island corporation and, two, Rhode Island law of indemnity will govern whether there is evidence sufficient for a jury to find an implied contractual obligation to indemnify.

## II. The Scope of the Immunity Established by the Massachusetts Act

The Massachusetts Workmen's Compensation Act mandates that, absent prior express reservation of common law rights, the injured employee's exclusive remedy against his employer is to seek a compensation award.[6] The Act limits the amount of the award[7] but, in exchange, imposes liability on the employer regardless of fault.[8] The employee's common law right of action

---

5. Cf. *Wolverine Ins. Co. v. Tower Iron Works, Inc.*, 370 F.2d 700 (1st Cir. 1966) in which the question was raised but not decided whether an indemnity claim was controlled by tort or contract choice-of-law principles.

6. M.G.L.A. c. 152, § 24 (1958).

7. E. g., *id.* § 34A (Supp.1976–77).

8. *Id.* § 26.

against a tortious third party "other than the insured" is preserved.[9] In addition, the employer is subrogated to the employee's rights against the third party.[10] By judicial gloss, *Bresnahan v. Barre,* 286 Mass. 593, 190 N.E. 815 (1934), an injured employee also cannot bring a common law suit against a tortious fellow employee.

Whether this statutory scheme immunizes the employer and its corporate officer from claims for indemnity raised by a third party has never been decided or squarely discussed by a Massachusetts court.[11] No Massachusetts court has decided whether the Act grants immunity from both contractual and non-contractual indemnity claims, grants limited immunity from contractual indemnity claims only, or grants no immunity at all. For many years in other contexts, Massachusetts courts have recognized the broad scope of the immunity granted by the Massachusetts Act. For example, in *Bresnahan v. Barre,* 286 Mass. 593, 190 N.E. 815 (1934), an employee of an insured employer was protected by the statutory immunity from suit by an injured fellow employee. The Court based its interpretation on the comprehensive purposes of the statute, stating:

> One purpose of the Workmen's Compensation Act was to sweep within its provisions all claims for compensation flowing from personal injuries arising out of and in the course of employment by a common employer insured under the act . . . which but for the act would exist at common law. *Id.* at 597, 190 N.E. at 817.

To be consistent with this long-standing statement of legislative purpose, this Court must recognize a broad immunity from all claims "flowing from" the employee's injury. The immunity so defined protects Advanced Materials from Star Chopper's non-contractual claim arising from breach of a common duty owed to the employee by both manufacturer and employer. Thus, even if a jury found the employer actively or solely negligent and the manufacturer only passively negligent or strictly liable without any fault, Star Chopper's claim for indemnity is barred by the Massachusetts Act. AMS' liability for injuries caused by breach of its duty to Paula Roy have been fully

9. *Id.* § 15.

10. *Id.*

11. The two recent Massachusetts cases involving an indemnity claim against an employer who has paid an award pursuant to the Massachusetts Act offer little guidance. In *Stewart v. Roy Bros. Inc.,* 358 Mass. 446, 265 N.E.2d 357 (1970), an employee of a fuel storage company sued the truck company whose pump facilities allegedly caused the employee's injuries. The employer had already paid a compensation award. The truck company sought indemnity on three theories: breach of a duty to the truck company as a business invitee to maintain safe premises, an implied contractual obligation to indemnify and a non-contractual indemnity claim based on the employer's active negligence and the truck company's passive negligence. The Massachusetts Supreme Judicial Court noted that this was a case of first impression in that state. The Court held that, in light of the jury verdict that the truck company itself was negligent, no indemnity claim could lie on count one. The Court affirmed a directed verdict in favor of the employer on the second count. Finally, the Court rejected any indemnity based on the active/passive distinction and insisted that the indemnitee not have participated in any way in the tortious conduct.

Significantly, both third party plaintiff and defendants in the case at bar find support for their positions in *Stewart.* Star Chopper notes that these three counts were not dismissed out at the pleading stage and counts one and three were even submitted to the jury. These facts are, however, of little significance. In essence, the Court's holding rested on general indemnity law and sidestepped the difficult question of whether the Workmen's Compensation Act barred these claims from the start. The Court expressly indicated that it was not deciding whether count two stated a claim since the evidence so clearly failed to warrant finding an implied obligation to indemnify, *Id.* at 457–60, 265 N.E.2d at 364–65. Moreover, count one apparently rested on the employer's duty to a business invitee, independent of that owed to the employee. We consider this case, the most detailed in Massachusetts to date, inconclusive on the issue of workmen's compensation immunity. We regard the treatment of the problem by the Massachusetts Supreme Judicial Court in *Afienko v. Harvard Club of Boston,* 365 Mass. 320, 312 N.E.2d 196 (1974) equally unhelpful. Although the non-contractual indemnity claim reached the jury, the reviewing court again denied recovery based on the jury's verdict of negligence of the indemnity claimant.

satisfied by payment of a compensation award.

Arguably, this interpretation of the Massachusetts Act runs counter to a sound maxim of statutory construction requiring a clear expression of legislative intent to alter or destroy a common law right—here non-contractual indemnity. *Trail Builders Supply Co. v. Reagan,* 430 F.2d 828 (5th Cir. 1970) (Supreme Court of Florida's response to a certified question). A Massachusetts court applied this maxim to its workmen's compensation statute and concluded that the mother's action against employer for expenses she incurred in care of her injured son was not barred. *King v. Viscoloid,* 219 Mass. 420, 106 N.E. 988 (1914). However, this action was wholly independent of her son's action against his employer; the non-contractual indemnity claim is not independent. Moreover, the purpose and provisions of the compensation statute clearly indicate a general willingness to replace common law rights of action,[12] defenses[13] and even the jurisdiction and procedures of common law courts.[14] Admittedly, Section 15 of the Massachusetts Act expressly preserves the employee's common law rights against third parties. Obviously, when the legislature intended to preserve common law rights, it expressly provided to that effect.

Since the Court finds no Massachusetts judicial thinking directed to the indemnity question, the Court turns to Massachusetts case law on the analogous issue of whether the Act immunizes the employer from contribution claims. In the pretrial Order in this case, this Court held that the Massachusetts Act barred claims for contribution, relying on an unpublished opinion of United States District Judge Murray interpreting the Massachusetts Act to bar contribution. *Morse v. L. & J. Press Corp.,* Civil Action No. 75–1848 (February, 1976). Although

again no Massachusetts cases were directly on point, Judge Murray noted that a majority of courts had recognized immunity from contribution claims. He also relied on an analogous holding of the Massachusetts Supreme Judicial Court in *O'Mara v. H. P. Hood & Sons, Inc.,* 359 Mass. 235, 268 N.E.2d 685 (1971). To be liable as a joint tortfeasor under the contribution statute in Massachusetts, the Court held in *O'Mara* that a potential contributor must be "directly liable to the injured person." *Id.* at 238, 268 N.E.2d at 687. Although the case did not involve workmen's compensation immunity,[15] nothing in the opinion indicates that an employer would be required to contribute even though not directly liable to the injured employee. Admittedly, the Massachusetts Court in *O'Mara* expressly refrained from deciding whether indemnity claims were likewise barred. However, the argument offered in that case supports the position barring non-contractual indemnity claims. Both contribution and non-contractual indemnity actions are based on the joint liability of the parties to the injured person. When one party is no longer liable, neither action should be available. *Cf. Newport Air Park, Inc. v. United States,* 419 F.2d 342 (1st Cir. 1969).

Only the United States District Court in Massachusetts has squarely confronted whether the immunity granted by the Massachusetts Act bars contractual indemnity claims as well. In *Luken v. Westermann,* C. A. 70–511–M (February 23, 1972) (unpublished opinion), Judge Murray concluded that the Act immunized the employer even against an implied contract to indemnify. The architect/manufacturer sought indemnity from the employer/owner based on an express term in their contract requiring the owner to give notice to the architect upon discovery of a defect. The only support

---

**12.** M.G.L.A. c. 152 § 24 (1958).

**13.** *Id.* § 66 (Supp.1976–77).

**14.** *E. g., id.* § 8.

**15.** In that case, the injured party was a guest in an automobile. She brought suit against the driver of the other car involved in the accident. He in turn sued the host driver for contribution.

In Massachusetts at that time, a host driver would only be liable to her guest if she had operated the vehicle in a grossly negligent manner. The *O'Mara* Court held that the host driver could only be liable for contribution to the other driver if the host driver was grossly negligent and thus directly liable to her guest.

Judge Murray relied on for his interpretation was the broad purpose behind the statute's election of remedies by the employee against the employer and its purpose to limit liability.

We are not bound by this decision. Nor do we find allowing an employer to contract away his immunity by an express or implied contract to indemnify offensive to the purposes of the Act. If citizens can waive their constitutional immunity against self-incrimination, for example, we see no reason why they cannot contractually waive statutory immunities as well. Admittedly, the argument has more force when the employer has expressly contracted to indemnify. Nonetheless, in the particular circumstances presented by this case, an implied contract to indemnify arising out of an express undertaking by AMS has sufficient indicia of knowing waiver by AMS to preserve the policies of the Act's immunity.

Moreover, the district court's opinion in *Luken* is contrary to the interpretation by a majority of courts of state and federal compensation statutes. The overwhelming majority have held that the employer was immunized against non-contractual indemnity claims but could be held liable based on express or implied contracts to indemnify the third party. 2A Larson's *Workmen's Compensation* § 76.44, n. 81 (1976) (cases cited therein). The standard reasoning of the majority starts with the assumption that any liability of the employer for the injury of the employee is exclusively satisfied by a compensation award. The non-contractual indemnity claim arises solely from this discharged liability; the contractual indemnity claim exists independent of a duty owed to the employee. In *Slattery v. Marra Bros.*, 186 F.2d 134 (2d Cir. 1951), Judge Learned Hand recognized that general indemnity law permits the transfer of liability to the party primarily at fault only "upon the assumption that both parties are liable to the same person for the joint

wrong." However, "when one of the two is not so liable" as when he has discharged his liability under a compensation act, "the right of the other to indemnity must be found in rights and liabilities arising out of some other legal transaction between the two." *Id.* at 139. To test whether the indemnity claim is barred, the court must determine whether it is "on account of" the injury, *Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 129, 76 S.Ct. 232, 100 L.Ed. 133 (1956). Even if the party seeking indemnity uses contract language, if the obligation has its origin "in the injury itself and the circumstances surrounding it, and the liabilities that it creates and the indemnity obligation itself springs exclusively from the comparison of the relationships of the two parties to the injury," it is barred. 2A Larson's, *supra*, at § 76.10, at 14–293.

In sum, this Court is unwilling to adopt an aberrational interpretation of the Massachusetts Act without explicit direction from a Massachusetts court or legislature, particularly when this interpretation appears to run counter to the central thrust of the statute and the analogous trends in the Massachusetts courts.[16] Consistent with majority rule, the Court concludes that the Massachusetts Act grants the employer immunity from indemnity claims based solely on a non-contractual relationship as tortfeasors. However, Third Party Defendant does *not* receive immunity against express or implied obligations to contract based on an independent contractual relationship.

## III. The Implied Obligation to Indemnify

Because the Court holds that Star Chopper can enforce a contractual claim for indemnity against AMS, the question whether Star Chopper has presented evidence that, as a matter of law, gives rise to an implied contract to indemnify is now before us. The implied obligation to indemnify must rest on a particular duty the employer who has purchased the machine

---

**16.** In fact, the only instance of a federal court holding that the immunity provisions of a state workmen's compensation act did not bar non-contractual indemnity claims followed certification of the question and a detailed, clear response from the highest court in the state, *Trail Builders Supply Co. v. Reagan*, 430 F.2d 828 (5th Cir. 1970).

owes to the manufacturer, distinct from the duty he owes to his employees. *Beach v. M & N Modern Hydraulic Press Co.,* 428 F.Supp. 956, 961 (D.Kan.1977). Clearly, the mere fact of a contractual relationship between the would-be indemnitee and indemnitor does not necessarily give rise to an implied obligation to indemnify. For example, courts have refused to regard the vendor/vendee relationship, without more, as giving rise to a contract to indemnify. *See e. g., Santisteven v. Dow Chemical Co.,* 506 F.2d 1216 (9th Cir. 1974); *Bertone v. Turco Products, Inc.,* 252 F.2d 726 (3d Cir. 1958); *Jennings v. Franz Torwegge Machine Works,* 347 F.Supp. 1288 (W.D.Va.1972); *McClish v. Niagara Machine & Tool Works,* 266 F.Supp. 987 (S.D.Ind.1967); *Kennedy-Ingalls Corp. v. Meissner,* 16 Wis.2d 145, 113 N.W.2d 562 (1962); *Templeton v. Blaw-Knox Co.,* 365 N.E.2d 235, 7 Ill.Dec. 950, 49 Ill.App.3d 1057 (1977). These courts are particularly reticent to recognize "downstream indemnity" because it amounts to reversing the strict products liability imposed on a manufacturer for injuries to all users of the product. The situation in which a court is likely to find an implied obligation to indemnify is typified by *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). The stevedore/employer had an implied obligation running to the shipowner/indemnitee to stow cargo reasonably safely. That obligation of workmanlike service gave rise to an implied obligation to indemnify. Whether the facts and legal relations of this case warrant a finding of an implied contract will be decided according to Rhode Island law. However, confronted by an absence of Rhode Island law on point, we look to the resolution of the issues before us by courts in other jurisdictions.

Star Chopper's indemnity claims based on Third Party Defendant's alleged failure to warn its employees of the hazards of the machine and any alteration or misuse following delivery are easily dismissed. If the machine was not defective when Star Chopper delivered it and if it was properly marketed, Star Chopper will not be held liable and no claim for indemnity is necessary. The misuse of the machine, if unforeseeable, is a complete defense for Star Chopper to liability based on any theory. *McClish v. Niagara Machine & Tool Works,* 266 F.Supp. 987 (S.D.Ind.1967). If the misuse or alteration of the machine was foreseeable, Star Chopper may still be liable but the Third Party Defendants have no implied contractual obligation to indemnify. *See, e. g., Kessler v. Bowie Machine Works, Inc.,* 501 F.2d 617 (8th Cir. 1974); *Auld v. Globe Indemnity Co.,* 220 F.Supp. 96 (W.D. La.1963); *William H. Field Co., Inc. v. Nuroco Woodwork, Inc.,* 115 N.H. 632, 348 A.2d 716 (1975). The employer's duty of proper use and care of the machine runs solely to its employees. Liability for breach of that duty has been satisfied by payment of a compensation award. The employer does not have an independent duty running to the manufacturer to use the machinery so as to avoid imposition of liability upon the manufacturer. The Ninth Circuit viewed the imposition of such a duty as standing "indemnity on its head." *Santisteven v. Dow Chemical Co.,* 506 F.2d at 1219. In that case, the manufacturer was denied indemnity from the employer for employer's alleged failure to instruct his employee properly and provide a safe place to work. In *Kessler* an employee was injured when he kicked a machine to aid its proper functioning. Although the employer had altered the safety bar to permit it to be moved aside, operators had habitually kicked the machine even prior to its alteration. This kicking action was found to be a foreseeable misuse. Thus, the manufacturer was liable but could not reach the employer, as a "co-designer," since he was immunized by the compensation statute. In fact, New York is the only jurisdiction to allow an indemnity claim against an employer for failure to follow precautions on the label, for use of untrained personnel and for failure to air the premises after use of a fumigant, *Dole v. Dow Chemical Co.,* 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972). *But see* 2A Larson's, *supra,* § 76.44 at 14–405 (critical of this decision; notes lack of authority for it).

In light of these courts' well-founded hesitation to recognize indemnity claims by a manufacturer against an employer/purchaser, this Court approaches Star Chopper's claim for indemnity with great reservation. Nonetheless, we are persuaded that the evidence produced by Star Chopper, if true, posits a relationship between Star Chopper and AMS sufficiently different from the manufacturer/purchaser relationships involved in the cases discussed *ante.* The evidence tends to show a relationship more in the nature of co-manufacturers.

The evidence in this case, if believed, provides the basis for finding an implied contract to indemnify. We recognize the potential our decision has for undermining the policies of both strict liability and workmen's compensation. Therefore, our holding on this issue is narrowly confined to the unusual allegations and evidence before us.

■ Essentially three allegations distinguish the relationship of the parties from a typical manufacturer/purchaser relationship and together suggest an implied contract to indemnify. First, Star Chopper contends that AMS was exclusively responsible for the design of the take-up machine that injured Plaintiff Roy. Star Chopper, principally through the testimony of its owner, Mr. George LeToile, argues that it simply followed the detailed, complete designs imposed by its customer, AMS. These drawings, all conceded, omit safety devices. Second, Mr. LeToile testified that he inquired into adding safety devices. His testimony, corroborated by Star Chopper's expert, was that to add effective safety devices, knowledge of the exact angle at which the metal strips enter the rollers was essential. Mr. LeToile stated that AMS refused to inform him of the angle because it did not wish to reveal the secret plating process it had developed. In response to Mr. LeToile's direct question about installation of safety devices, Mr. Hingorany, on behalf of AMS, allegedly responded that AMS would add the safety guards. Finally, Star Chopper alleged that AMS had sole responsibility for assembling the plating unit of which the machine in question

formed a part. Thus, assuming the facts to be as Star Chopper has contended, AMS undertook sole responsibility for the design and assembly of the machine and expressly undertook sole responsibility for the addition of safety devices. If the jury had found that Star Chopper reasonably relied on all these factors, in light of the difficulties of installing devices and the dangers in failing to, then Star Chopper is entitled to indemnity to cover its liability for failing to install safety devices.

We do not decide today whether any one of these factors alone would suffice to find an indemnity contract. The combination distinguishes this case from decisions of other courts cited by AMS involving only one or two of the three factors before us. *E. g., Templeton v. Blaw-Knox,* 365 N.E.2d 235, 7 Ill.Dec. 950, 49 Ill.App.3d 1057 (1977); *Ruvolo v. United States Steel Corp.,* 139 N.J.Super. 578, 354 A.2d 685 (1976); *Pust v. Union Supply Co.,* 561 P.2d 355 (Colo.App. 1976).

■ These cases principally stand for the proposition that the manufacturer has a non-delegable duty to make machines that include necessary safety devices; these courts did not even consider a contractual indemnity claim against the purchaser/employer. In our instructions to the jury regarding Star Chopper's liability to Paula Roy, we clearly followed the holding of these courts. The Court instructed the jury to find Star Chopper liable to Plaintiff Roy in the case in chief despite the express representation by AMS that it would add safety devices. The basis of the instruction was the New Jersey Supreme Court's decision in *Bexiga v. Havir Manufacturing Corp.,* 60 N.J. 402, 290 A.2d 281 (1972). *Accord Wheeler v. Standard Tool and Manufacturing Co.,* 359 F.Supp. 298 (S.D.N.Y. 1973), *aff'd* 497 F.2d 897 (2d Cir. 1974); *Cf., Restatement 2d Torts,* 402 A Comment p. (1965). In *Bexiga,* the manufacturer was not exempt from liability simply because the custom of the trade was for the purchaser to add the safety device appropriate for its specific use. Since installation of a multi-purpose safety device was in fact fea-

sible, the manufacturer had a nondelegable duty to install such devices. The facts of the instant case require an extension of the *Bexiga* holding to impose liability even when the purchaser expressly undertakes to install devices.[17] By imposing liability to injured users despite the express representation by the employer, the manufacturer is encouraged to check that the purchaser with whom he has dealt directly did indeed carry out its undertaking. The *Bexiga* rule is consistent with the dual rationale of products liability—that the manufacturer is better able to distribute the cost of accidents and develop an all-purpose safety device. *See* Recent Cases, 86 Harv.L.Rev. 923 (1973). The rule's extension to imposition of liability even when the purchaser expressly undertakes to install devices is equally consistent.

■ However, the Court holds that the express representation of the purchaser, in combination with its responsibilities for design and assembly, does give rise to an implied obligation to indemnify for failure to add safety devices. At first blush, we appear to be moving in a circle, imposing liability on the manufacturer on the one hand and excusing it on the other through the indemnity contract. However, in fact,

the policy of strict liability—to protect users of defective products—is best preserved by this arrangement. Plaintiff Roy still can succeed in strict liability against the manufacturer; the manufacturer is liable for the entire judgment regardless of the indemnity claim.[18] The manufacturer bears the risk and cost of proving the indemnity contract against the employer. The employer, in turn, by expressly undertaking to install safety devices and designing and assembling the machine, has, in effect, waived his immunity under the Massachusetts Act for failing to so install. The indemnity claim is based on a contractual undertaking between manufacturer and employer and is independent of the duty owed to the employee. Most importantly, the employer who promises to install safety devices now also has financial impetus over and above compensation liability to carry out its promise. This extra liability is commensurate with the responsibility it assumed over and above that of the ordinary employer. The manufacturer who relies on the employer's promise and the employer making the promise both now have economic reason to guarantee that safety devices are in fact installed. Significantly, the purchaser in this case is not an ordinary con-

---

**17.** The Third Circuit and the Second Circuit have expressed a contrary opinion that an express representation may indeed exempt the manufacturer from liability. *Taylor v. Paul O. Abbe, Inc.*, 516 F.2d 145 (3rd Cir. 1975); *Wheeler v. Standard Tool and Manufacturing Co.*, 497 F.2d 897 (2d Cir. 1974). The *Taylor* case is distinguishable from the case at bar because the Third Circuit relied, in part, on the fact that the manufacturer merely replaced parts of a pre-existing machine. Most importantly, the Third Circuit recognized the potential for undermining the policies of strict liability and limited the case to the facts before it. The Court acknowledged that when injury was nearly certain to occur or when a complete, assembled product was delivered, policy would dictate a contrary result. 516 F.2d at 148–49. In this case, despite allegations to the contrary, the Court finds that Star Chopper manufactured a complete machine, not a component part. *See Pust v. Union Supply Co.*, 561 P.2d 355 (Colo.App.1976).

We also instructed the jury to consider Star Chopper's defense that, without knowledge of the angle of entry of the metal strips, it was not feasible to equip the machine with safety de-

vices. The defense of feasibility was recognized by the *Bexiga* Court. In the instant case, given that information, installation of safety guards was easily technically and financially feasible. Moreover, the manufacturer was face to face with the purchaser possessing the necessary information. Thus, this Court further instructed that Star Chopper, to assert the defense of feasibility successfully, must prove that it made reasonable efforts to obtain the information.

**18.** Significantly, Plaintiff Roy also has her claim that Star Chopper's failure to give adequate warning made the machine defective. Since AMS did not expressly undertake to warn its employees, no indemnity contract for failing to warn exists. *See Associated Engineers, Inc. v. Job*, 370 F.2d 633, 645 (8th Cir. 1966). Its liability for failure to warn was thus fully satisfied by the payment of a compensation award. Thus, the jury was instructed not to consider Star Chopper's claim for indemnity if it based its finding of Star Chopper's liability to Plaintiff Roy on Star Chopper's failure to warn.

sumer who would have no way of appreciating the danger and whose bargaining position is unequal to the manufacturer's. Any claim for indemnity from a consumer would be viewed with great suspicion by this Court. But when the purchaser is also a business and has experience with machinery of this type and its attendant dangers, an indemnity contract is not unconscionable.

Reference to the general law of indemnity support the Court's implication of an indemnity contract based on these facts. Although predominantly in the area of maritime law, e. g., *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); *Booth Steamship Co. v. Meier and Oelhaf Co.*, 262 F.2d 310 (2d Cir. 1958), implied contracts to indemnify arising from a duty to perform the contract in a workmanlike manner in contexts other than maritime have been recognized. *E. g., Petty v. New York Central Railroad*, 322 F.Supp. 1324 (S.D.N.Y. 1970), *aff'd*, 2 Cir., 438 F.2d 538 (1971); *Diamond State Telephone Co. v. University of Delaware*, 269 A.2d 52 (Del.1970). The instant facts present an even stronger case for implication of an indemnity contract than *Diamond* wherein both an obligation to perform in a workmanlike manner and the contract to indemnify were implied, despite the indemnitor's payment of a compensation award. In the case before us, AMS allegedly expressly obligated itself to install safety devices; this obligation gives rise to the implied contract to indemnify.

Analogy can also be made to indemnity contracts running between employer and independent contractor. Star Chopper had a duty to equip the machine with safety devices. It contracted with AMS for AMS to perform this duty. Star Chopper is still liable to Plaintiff Roy because this duty

was nondelegable, *see supra*. Restatement 2d of *Torts* sec. 214 (1965). However, Star Chopper can recover indemnity against AMS as an independent contractor whose negligence exposed Star Chopper to liability.[19] *Cf.* Restatement sec. 401. A third approach to these facts requires reference to standard contract analysis. Star Chopper is in effect seeking consequential damages for breach of an express undertaking by AMS to install safety devices. This breach was allegedly the proximate cause of Plaintiff Roy's injuries and Star Chopper's resulting liability. *Union Carbide Corp. v. Dunn Brothers General Contractors, Inc.*, 294 F.Supp. 704, 708 (M.D.Tenn. 1968).[20]

The Court freely concedes that this decision steers an unchartered course, not only with regard to Rhode Island law but also with regard to tort law generally. However, the Court believes this decision adopts the fairest and legally consistent resolution of the unusual circumstances of this case.

## IV. Conclusions

In conclusion, the Court holds:

1. Rhode Island courts would enforce the immunity created by the Massachusetts Act against an indemnity claim by a Rhode Island manufacturer;

2. The indemnity law of Rhode Island will govern the question of whether Star Chopper has alleged facts sufficient for a jury to find an implied contract to indemnify;

3. The Massachusetts Act immunizes AMS against Star Chopper's non-contractual indemnity claims only but does not immunize AMS against contractual indemnity claims; and

---

**19.** For example, a municipality has a non-delegable duty to maintain streets in a safe condition. However, it can recover indemnity from a contractor who has breached its contract to make repairs. 42 C.J.S. *Indemnity* § 22 (1944).

**20.** The district court in *Union Carbide* also held that no indemnity obligation could be implied without a clear and unequivocal expression of an intention to indemnify under Tennessee law.

That expression was lacking, particularly since the indemnity clause in the standard contract used by the parties was deleted. The fact that the Court nonetheless allowed damages for breach of an express undertaking supports our instruction to the jury that they could find a contract to indemnify only if AMS expressly assumed the responsibility to install safety devices.

4. Star Chopper has presented evidence upon which a jury could find an implied contract to indemnify.

Third Party Defendant AMS' Motion for Summary Judgment is denied. The question was properly placed before the jury.