SW (DELAWARE), INC., d/b/a SW Industries, Inc., a Delaware corporation, and B. T. R., Inc., a Delaware corporation, Defendants and Third Party Plaintiffs Below, Appellants,

v.

AMERICAN CONSUMERS INDUSTRIES, INC., Third Party Defendant Below, Appellee.

Supreme Court of Delaware.

Submitted: April 15, 1982.

Decided: Aug. 30, 1982.

Morton Richard Kimmel and Michael Weiss (argued) of Kimmel & Spiller, P. A., Wilmington, for defendants and third party plaintiffs below, appellants.

B. Wilson Redfearn and Colin M. Shalk (argued) of Tybout, Redfearn, Casarino & Pell, Wilmington, for third party defendant below, appellee.

Before HERRMANN, Chief Justice, QUILLEN and HORSEY, Justices.

HORSEY, Justice:

In this product liability third-party claim, the manufacturer of an allegedly defective machine seeks indemnification from the machine's purchaser for any damages awarded the purchaser's employee for personal injury sustained while operating the machine. The manufacturer's successors (collectively referred to as "SW"), defendants and third party plaintiffs below, appeal Superior Court's grant of the employer's, American Consumer Industries, Inc. (hereafter ACI), Motion to Dismiss the third

party complaint, which the Court treated as a Motion for Summary Judgment.

ACI's employee, David Fehl, plaintiff below, was injured while operating an ice-cubing · machine designed, manufactured and sold by SW to ACI. Fehl's injury occurred when his foot slipped while he was trying to clean snow off the machine while it was in operation. In the course of falling upon the machine, his right hand went into an uncovered opening and came in contact with the machine's saw blade, which severed his fingers.

After collecting workmen's compensation benefits from ACI, his employer, Fehl filed the instant personal injury suit against SW as the designer, manufacturer and seller of the machine. The Complaint states alternative claims against SW for liability without fault, or strict liability, as well as for negligence. Plaintiff Fehl alleges that his injury resulted from the machine's lack of safeguards and safety devices as well as SW's negligence in the design, manufacture, testing and inspection of the machine.

■ SW contends in its amended third-party Complaint that ACI is liable for indemnification, should SW be held liable to Fehl, because of ACI's breach of an implied contract[1] with SW. The essence of the alleged implied contract was that ACI would use due care in its installation and operation of SW's ice-cubing machine. ACI's installation of the machine is said to have been improper because the machine was placed on I-beams extended over a heated pit and that ACI thereby created an unsafe work condition for ACI's employees, including Fehl, and thereby· breached its implied contract with SW to use due care.

Superior Court dismissed SW's third-party complaint based on ACI's allegedly improper installation of the machine as being insufficient as a matter of law to establish either: (a) an implied contract between the manufacturer and the purchaser and hence duty running from ACI to SW or (b) a special relationship between manufacturer and purchaser as found to exist in Diamond State Tel. Co. v. University of Delaware, Del.Supr., 269 A.2d 52 (1970) or in Roy v. Star Chopper Co., Inc., D.R.I., 442 F.Supp. 1010 (1977), aff'd, 1st Cir., 584 F.2d 1124 (1978). The Superior Court found the relationship between SW and ACI to be simply that typically found to exist between a manufacturer/seller and a purchaser/user. We agree and therefore affirm.

■ SW correctly states Delaware law as recognizing that a third-party tortfeasor may assert a claim for indemnification against the injured party's employer for the latter's breach of contract—express or implied—with the third party to perform in a careful and prudent manner, assuming the employer's breach of such duty was the actual cause of its employee's injury. Diamond State Tel. Co. v. University of Delaware, supra; Powell v. Interstate Vendaway, Inc., Del.Super., 300 A.2d 241 (1972). This ruling, of course, represents an exception to the exclusivity principle of our workmen's compensation law referred to above. (See footnote 1 above.) In Diamond State this Court, paraphrasing and adopting the position taken in 2A Larson, Workmen's Compensation Law, § 76.00 (1970), stated that a third party has a right

1. Of course, SW's claim over against ACI must be stated in terms of a contractual cause of action rather than a claim based in tort. By ACI's payment of workmen's compensation benefits to Fehl, Fehl was thereby precluded from asserting any tort claim against ACI, under the exclusivity principle codified in 19 Del.C. § 2304. Diamond State Tel. Co. v. University of Delaware, Del.Supr., 269 A.2d 52 (1970); Kofron v. Amoco, Del.Supr., 441 A.2d 226 (1982). SW originally sought contribution "and/or" indemnification in its third-party claim over against ACI. But Superior Court found ACI to have "impliedly conceded" that contribution premised on a joint tortfeasor relationship between SW and ACI was legally foreclosed since Fehl was barred by compensation law from asserting any tort claim against his employer, ACI. Diamond State Tel. Co. v. University of Delaware, supra. Hence, SW's only recourse against ACI is by way of a contractual claim for indemnity and not contribution. Howard, Needles, Tammen & Bergendoff v. Steers, Perini & Pomeroy, Del.Supr., 312 A.2d 621 (1973).

to maintain an action against a negligent employer who may be held liable for indemnity if the employer:

"... has breached an independent duty owed a third party, or if in the circumstances there is a basis for finding an implied promise of indemnity. If such is the fact, [the exclusivity provision of the workmen's compensation law is no bar to the third party suit against the employer.]" *Diamond State Tel. Co. v. University of Delaware, supra,* at 56–7.

The question then presented is whether there was sufficient evidence of either an implied obligation or independent duty running from ACI to SW apart from and independent of any obligation owed by ACI to its employees, including Fehl. SW contends that the averments of the third-party Complaint are sufficient to show the existence of a "separate contract" between ACI and SW. SW says, "[t]he fact that [ACI] installed the machine and did so in an improper manner, <u>created</u> the implied contract between [ACI] and [SW] independent of any duties owed by [ACI] to its employees"; and since Fehl's injury resulted from the unsafe manner in which the ice-cubing machine had been installed, ACI thereby breached its contract with SW. (underlining added for emphasis). Thus, SW contends that ACI came under a duty "to install and use the machine in a safe and proper manner [and] [b]y failing to do so, ACI breached an independent duty owed to [SW]."

SW's alternative basis for indemnity is that a "special relationship" arose between it and ACI "because ... [ACI] was required[2] to design and install the flooring ..."; and that ACI thereby became a co-designer and co-manufacturer of "an integral part of the system" for melting accumulated ice from the machine. SW asserts that this "special relationship" is analogous to one found to exist between an employer

and a third-party machine manufacturer in *Roy v. Star Chopper, Inc., supra.*

ACI responds: (a) that it bought the machine in a nearly-assembled condition and ready for operation upon its two parts being bolted together and then being secured to a flooring; (b) that its placement of the machine on I-beams over a pit was not an integral part of the ice-cubing machine; and (c) that there is no evidence that the manner in which ACI installed the machine was a proximate cause of Fehl's injuries.

We find no factual basis to infer a duty running from ACI to SW requiring ACI to install the machine in such a manner as to protect ACI's employees from injury while operating the machine. There is no evidence of any instruction by SW to ACI as to the manner in which the machine should be installed nor any warning against the method of installation employed by ACI. That being so, there is no basis for finding ACI to have become a co-designer of the machine merely by its election to place the machine on steel I-beams over a heated pit rather than by employing some other more conventional method of installation. Hence, there is no evidence from which a trier of fact could reasonably infer that ACI came under any obligation to SW to install and use the machine in a particular manner so as to protect ACI's employees from injury.

Further, there is no evidence to permit a rational trier of fact to reasonably find a "special relationship" to have arisen between SW and ACI relating to the design and manufacture of the ice-cubing machine from which an obligation of ACI to indemnify SW from a third-party claim might arise. Without such additional evidence, the fact that ACI and SW "... entered into a sales contract is not sufficient to establish that type of relationship from which an implied obligation to indemnify the third party may arise." *Arcell v. Ash-*

2. But SW does not explain why or how ACI was "required" to resort to its beam and pit technique for installation.

land Chemical Company, Inc., 152 N.J.Super. 471, 378 A.2d 53 (1973); *Therrien v. Safeguard Manufacturing Company*, 35 Conn.Sup. 268, 408 A.2d 273 (1979); *Roy v. Star Chopper, Inc., supra.*

The special relationship found in *Star Chopper* to exist between the manufacturer and the purchaser/employer as a basis for finding an implied contract by the latter to indemnify the former does not here exist. There, the evidence of a special relationship included: (1) that the purchaser/employer imposed certain design specifications on the manufacturer which required the omission of certain safety devices normally placed on the machine; (2) that the purchaser/employer assumed full responsibility for the actual assembly of the unit of which the purchased machine was a part; and (3) that the purchaser/employer also assumed responsibility for the addition of any necessary safety devices upon the machine's final assembly at the plant. That evidence, the Court ruled, "... if true, posits a relationship between [the manufacturer and the purchaser/employer] ... in the nature of co-manufacturers [and] ... provides the basis for finding an implied contract to indemnify." *Id.* at 1020.[3] Here again, in contrast to *Star Chopper*, there is no evidence to support SW's assertion that ACI's beam and pit technique for installing the ice-making machine was an "integral part" of the "ice-making system." Hence, while ACI's installation technique may have resulted in the creation of an unsafe working condition for its employees, such condition was not causally related to Fehl's fingers being amputated by the ice machine's unshielded blade.

The implied contract, covenant or obligation found to be the basis for a third-party claim for indemnity in *Diamond State Tel. Co. v. University of Delaware, supra,* is also lacking in this case. There, the University was charged with negligence in maintaining on its premises a dangerous condition (electric conduits in a manhole) which resulted in the death of a Telephone Company employee running television cables through the manhole under a contract with the University. The University sought indemnification from Telephone Co. contending that had the University been notified of intent to enter the manhole, it would have de-energized the electrical conduits in the manhole. The University's basis for indemnification was Telephone Co.'s alleged breach of an implied obligation running directly to the University to perform in a workmanlike and safe manner, knowing the work to involve dangerous conditions on the University's premises.

*Diamond State* is distinguishable from the instant case in at least several respects: (1) *Diamond State* involved a contract for performance of services, not a contract for the sale of a finished product; (2) the services were contracted to be performed by the employer, Telephone Co., on the premises of the alleged third-party tortfeasor, the University—thereby involving the principals in a performing relationship of interacting rights and duties; in contrast, here SW's performance and all contact with ACI ended with the delivery of the machine; (3) the University's contractual relationship with Telephone Co. arguably, and logically, included an obligation by Telephone Co. as employer, and a corresponding duty to the University, to perform its work with due care, with Telephone Co.'s alleged breach thereof a proximate cause of its employee's death. Here, as the Court below stated, "the simple contract of sale between ACI and S.W. does not give rise to an implied duty owed to S.W. by ACI to install and use the machine in a workmanlike manner.... ACI was solely responsible for the installation of the ice-cubing machine."

\* \* \*

Affirmed.

---

**3.** The *Star Chopper* Court also was careful to limit its holding to the unique facts of the case, recognizing "the potential our decision has for undermining the policies of both strict liability and workmen's compensation." *Id.* at 1020.