# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANDREW HINDINGER, | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | |
| | : | |
| J&M TEMP, LLC, f/k/a REXCON, | : | |
| LLC, and COMMAND ALKON, INC., | : | |
|     Defendants, | : | |
| and | : | |
| | : | Civ. Act. No. N20C-01-272 DJB |
| J&M TEMP, LLC, f/k/a/ REXCON, LLC, | : | |
|     Defendant/Third-Party Plaintiff, | : | |
| | : | |
|     v. | : | |
| | : | |
| HMA CONCRETE, LLC, d/b/a | : | |
| HERITAGE CONCRETE, | : | |
|     Third-Party Defendant. | : | |

## MEMORANDUM OPINION

Submitted: November 23, 2022
Decided: February 28, 2023

*On Third-Party Defendant's Motion to Dismiss – GRANTED*

Lawrance Kimmel, Esquire, and Linda Malkin, Esquire, KIMMEL CARTER ROMAN PELTZ & O'NEILL PA, Christiana, Delaware; *for Plaintiffs.*

Amy Taylor, Esquire, HECKLER & FRABIZZIO, Wilmington, Delaware; *for Defendants and Third-Party Plaintiff Command Alkon.*

Kevin Connors, Esquire, MARSHALL DENNEHY WARNER COLEMAN & GOGGIN, Wilmington, Delaware; Annice Mae Mattus, Esquire, Castell Abner III, Esquire, and J. Scott Shannon, Esquire, LEE SHOEMAKER, Washington, DC; Jeffrey G. Granillo, Esquire, CHAMBLISS, BAHNER, & STOPHEL, P.C., Chattanooga, TN; *for Defendants and Third-Party Plaintiff J&M Temp f/k/a/ Rexcon.*

Timothy Houseal, Esquire, and Jennifer Kinkus, Esquire, YOUNG CONAWAY STARGATT & TAYLOR LLP, Wilmington, Delaware; Nancy Chrissinger Cobb, Esquire, COBB & LOGULLO LAW OFFICES, Wilmington, Delaware; M. Abbegael Giunta, Esquire, and Ursula Silvering, Esquire, MCNEES WALLACE & NURICK LLC, Harrisburg, PA; *for Third Party Defendants HMA Concrete*.

**BRENNAN, J.**

## I. BACKGROUND

HMA Concrete, LLC d/b/a Heritage Concrete (hereinafter "Heritage") is a Delaware limited liability company involved in the ready-mix concrete business.[1] Heritage produces concrete through its operation of concrete batch plants. On May 22, 2019, Plaintiff Andrew S. Hidinger ("Hidinger"), an employee of Heritage, was performing maintenance at one of Heritage's concrete batch plants (the "Plant"). While in the course of his employment, a cement mixer activated without warning, causing Hidinger to fall inside and sustain injuries. Thereafter, Hidinger filed suit against J&M Temp, LLC f/k/a/ REXCON, LLC ("Rexcon") and Command Alkon, Inc. ("Alkon").[2]

Rexcon is a manufacturer and seller of industrial equipment who sold the component parts of the Plant to Heritage on November 11, 2016.[3] Rexcon and Heritage memorialized the sale through the execution of a sales order agreement (the "Rexcon Contract").[4] The Rexcon Contract provided that Heritage was responsible for (1) installation and assembly of the plant; (2) furnishing alternative safety devices; and (3) any additional disconnect switches or electrical wiring devices.[5] With respect to installation and assembly of the plant, the Rexcon Contract provided that "[Heritage] must install and use the products in a safe and lawful manner in

---

[1]    Rexcon Third-Party Compl. ¶ 2, Sept. 24, 2021 (D.I. 74).
[2]    Hidinger filed his initial Complaint on January 31, 2020, naming Rexcon as the lone defendant in the case. D.I. 1. Hidinger filed a Second Amended Complaint on March 11, 2021, adding Alkon as a party. D.I. 46.
[3]    Rexcon Third-Party Compl. ¶ 6.
[4]    Heritage's Mot. to Dismiss, Ex. 1 (hereinafter "Rexcon Contract"), Dec. 20, 2021 (D.I. 83). Though not paginated, the Rexcon Contract appears on page 4 and 5 of Heritage's attached exhibit.
[5]    *Id.*

compliance with applicable health and safety regulations and laws and general standards of reasonable care."[6]

The Rexcon Contract also contained a "Remedy" provision, which states all claims under the agreement must be made within six months of product delivery.[7] The provision details that the full extent of Rexcon's liability under the agreement is limited to a refund, repair, or replacement of component parts.[8] The provision bars any other remedy, "whether in contract or tort (including strict liability and negligence)."[9] The Rexcon Contract, however, did not include a command automation control (hereinafter the "Control Panel"), which is necessary to operate the Plant.[10] Instead, Heritage purchased the Control Panel from Command Alkon, Inc. ("Alkon").[11]

Heritage's parent company, Oldcastle Materials, Inc. ("Oldcastle"), entered into a Master Software License, Hardware Sales and Services Agreement ("Master Agreement") with Alkon on April 27, 2012.[12] Under the Master Agreement, Alkon would "license, sell and/or service certain hardware, software and/or equipment" to Oldcastle or any affiliated entity of Oldcastle, including Heritage.[13] Purchases of equipment under the Master Agreement were executed through a "Form Order

---

[6]     *Id.*
[7]     *Id.*
[8]     *Id.*
[9]     *Id.*
[10]    Rexcon Third-Party Compl. ¶ 14-15.
[11]    Alkon Third-Party Compl. ¶ 8, 10, 19-20, July 18, 2022 (D.I. 121).
[12]    *Id.* ¶ 8.
[13]    *Id.* ¶ 8. Heritage does not dispute that it is bound by the terms of the Master Agreement. *See* Heritage's Opening Br. (Alkon) at 2, Aug. 19, 2022 (D.I. 126) (noting that Heritage entered Master Agreement through Oldcastle).

4

Document" attached as an exhibit to the Master Agreement.[14]  On February 15, 2017, Alkon and Heritage (through Oldcastle) executed a contract, substantially in the form of the "Form Order Document," whereby Heritage purchased a Control Panel from Alkon (the "Purchase Order").[15]

The Purchase Order expressly incorporated the terms and conditions of the Master Agreement (collectively, the "Alkon Contract").[16]  Relevant to the dispute are three terms of the Alkon Contract.  First, Section 13.3 of the Master Agreement provides that Heritage, to the extent allowed by law, will indemnify Alkon "against any and all third [parties] (including employees of [Heritage]."[17]  The indemnification provision applies to any claims arising out of "[Heritage's] breach of any representation, warranty, or other obligation under this Agreement."[18]  Section 3.9.2 of the Master Agreement provides that "[i]nstallation of Equipment is the sole responsibility of [Heritage] unless Equipment installation services are separately purchased pursuant to an Order Document."[19]  Further, the Master Agreement provides a limitation on liability clause under Section 14.1.  The relevant clause precludes Alkon's liability for claims arising from "any modification or attempted modification, or use of the results of such modification or attempted modification, of any software, equipment or other materials, which modification is not performed by [Alkon] or at its express direction."[20]

---

[14]     Alkon Third-Party Compl., Ex. A (hereinafter "Master Agreement") § 1.1, 3.9, Sept. 7, 2022 (D.I. 128).
[15]     Alkon Third-Party Compl. ¶ 10; *see also* Alkon Third-Party Compl., Ex. B (hereinafter "Purchase Order"), Sept. 7, 2022 (D.I. 129).
[16]     Purchase Order at 3-4.
[17]     Master Agreement § 13.3.
[18]     *Id.* § 13.3.1.
[19]     *Id.* § 3.9.2.
[20]     *Id.* § 14.1.

5

In the underlying action, Hidinger asserts multiple theories of liability, including claims of negligence and breach of express and implied warranties against Rexcon and Alkon.[21] Both Rexcon and Alkon filed answers to Hidinger's latest Complaint denying liability on all alleged theories.[22]

Each Defendant filed a third-party complaint against Heritage based on theories of contractual indemnification.[23] Heritage has moved for the dismissal of each third-party complaint.[24] For the reasons set forth below, the motions to dismiss the third-party complaints are **GRANTED**.

## II. STANDARD OF REVIEW

"Under Superior Court Civil Rule 12(b)(6), the legal issue to be decided is, whether a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[25] Under that Rule, the Court will:

> (1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) not dismiss the claims unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[26]

---

[21] Third Am. Compl. ¶¶ 2-6, Jan. 17, 2022 (D.I. 88).
[22] D.I. 98, 102.
[23] D.I. 74, 121.
[24] D.I. 83, 126.
[25] *Vinton v. Grayson*, 189 A.3d 695, 700 (Del. Super. 2018) (quoting Superior Court Civil Rule 12(b)(6)).
[26] *Id.* (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 535 (Del. 2011)).

6

"The Court, however, need not accept conclusory allegations unsupported by specific facts or … draw unreasonable inferences in favor of the non-moving party."[27]  "If any reasonable conception can be formulated to allow Plaintiffs' recovery, the motion must be denied."[28]

## III. DISCUSSION

Section 2304 of Delaware's Workers' Compensation Act[29] provides that payment of workers' compensation benefits is the exclusive remedy for work-related injuries suffered by an employee from his or her employer.[30]  The exclusivity provision provides, in pertinent part:

> Every employer and employee, adult and minor, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies.[31]

Delaware courts have applied the exclusivity provision to bar "the imposition of joint tort liability upon an employer in a suit brought by an injured employee against a third party."[32]  "Thus, an employer cannot be held jointly liable to an

---

[27]    *Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435, at *7 (Del. Super. Ct. Aug. 16, 2021) (citing *Prince v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), overruled on other grounds by *Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255, 1277 (Del. 2018)).

[28]    *Vinton*, 189 A.3d at 700 (citing *Cent. Mortg. Co.*, 27 A.3d at 535).

[29]    19 *Del. C.* §§ 2301-2397.

[30]    *Id.* § 2304.

[31]    *Id.*

[32]    *O'Neal v. Mercantile Press*, 2009 WL 3327228, at *1 (Del. Super. Ct. Oct. 8, 2009) (citing *Precision Air, Inc. v. Standard Chlorine of Delaware, Inc.*, 654 A.2d 403, 406 (Del. 1995)).

7

employee for injuries sustained in the course of employment, even if the employer's negligence contributed to the employee's injuries."[33]

Rexcon and Alkon do not dispute that Heritage paid Hidinger workers' compensation benefits. Instead, Rexcon and Alkon both maintain that they can recover against Heritage under a theory of contractual indemnification. Under Delaware law, "a third party has a right to maintain an action against a negligent employer who may be held liable for indemnity if the employer… has breached an independent duty owed a third party, or if in the circumstances there is a basis for finding an implied promise of indemnity."[34] Therefore, the Court must determine whether Rexcon and Alkon have properly pled a claim for contractual indemnification, and as a result, have sufficiently stated a claim upon which relief can be granted.

## A. Heritage's Motion to Dismiss Rexcon's Third-Party Complaint

In *Precision Air Inc. v. Standard Chlorine of Del., Inc.*, the Delaware Supreme Court held that "[a]n employer, even though it has paid workmen's compensation benefits to an injured employee, can be held contractually liable to a third party where a contract between the employer and third party contains provisions requiring the employer to: (i) perform work in a workmanlike manner; **and** (ii) indemnify the third-party-indemnitee for any claims arising from the employer-indemnitor's own negligence."[35] This contractual indemnification exception to Delaware's workers'

---

[33]     *Menkes v. Saint Joseph Church*, 2011 WL 1235225, at *4 (Del. Super. Ct. Mar. 18, 2011).

[34]     *Precision Air*, 654 A.2d at 407 (quoting *SW (Del.), Inc. v. Am. Consumers Indus.*, 450 A.2d 887, 889-90 (Del. 1982)).

[35]     *Id.* (citing *SW (Del.)*, 450 A.2d at 889-90).

compensation scheme may arise through an express contractual obligation or an implied promise to indemnify.[36]

Rexcon contends that it has pled the existence of an express contractual indemnification claim consistent with the exception in *Precision Air*. In the alternative, Rexcon maintains that the circumstances of this case give rise to an implied obligation of indemnity.

### 1. Express Contractual Indemnification

Heritage asserts that the Rexcon Contract is a sales contract and consequently, contained no express language obligating Heritage to perform work in a workmanlike manner. Heritage claims its sole contractual obligation was to remit timely payment to Rexcon in exchange for the Plant's component parts. As a result, Heritage contends that the Rexcon Contract fails to meet the first of the two-part exception in *Precision Air*. Rexcon, however, avers that the "Product Safety" and "Remedy" provisions of the Rexcon Contract provide express contractual language well within the *Precision Air* exception.

The parties' arguments turn on the meaning of certain provisions within the Rexcon Contract. In Delaware, a contract's proper construction is a question of law that can be resolved upon a motion to dismiss.[37] "The Court will interpret contract terms according to their common or ordinary meaning and contract provisions as a whole, giving effect to each and every term… in a manner that does not render any

---

[36]   *SW (Del.)*, 450 A.2d at 888 ("a third-party tortfeasor may assert a claim for indemnification against the injured party's employer for the latter's breach of contract—*express or implied*—with the third party to perform in a careful and prudent manner, assuming the employer's breach of such duty was the actual cause of its employee's injury.") (emphasis added).

[37]   *Markow v. Synageva Biopharma Corp.*, 2016 WL 1613419, at *4 (Del. Super. Ct. Mar. 3, 2016) (quoting *L & L Broad. LLC v. Triad Broad. Co., LLC*, 2014 WL 1724769, at *3 (Del. Super. Ct. Apr. 8, 2014)).

provision illusory or meaningless."[38]  Delaware law "adhere[s] to the objective theory of contracts," which requires Courts "to interpret a particular contractual term to mean what a reasonable person in the position of the parties would have thought it meant."[39]  "When a contract only is susceptible of one interpretation, and that interpretation effectively negates the claim as a matter of law, a motion to dismiss should be granted."[40]

The Rexcon Contract memorialized a one-time sale of industrial construction equipment from Rexcon to Heritage.  The Rexcon Contract additionally sets forth various "Conditions of Sale."[41]  Rexcon relies upon the "Product Safety" condition, which states in full:

> Products designed and manufactured by [Rexcon] are capable of being used in a safe manner, but [Rexcon] cannot warrant their safety under all circumstances.  *[Heritage] must install and use the products in a safe and lawful manner in compliance with applicable health and safety regulations and laws and general standards of reasonable care.*[42]

Rexcon maintains that this language, along with other provisions of the Rexcon Contract,[43] demonstrate an ongoing contractual duty whereby Heritage agreed to install and operate the plant in a safe and workmanlike manner.

---

[38]     *Id.* at \*5 (quoting *Narrowstep, Inc. v. Onstream Media Corp.*, 2010 WL 5422405, at \*6-7 (Del. Ch. Dec. 22, 2010)) (internal quotation marks omitted).

[39]     *Vinton*, 189 A.3d at 704 (internal quotation marks and citations omitted).

[40]     *APX Operating Co., LLC v. HDI Glob. Ins. Co.*, 2021 WL 5370062, at \*5 (Del. Super. Ct. Nov. 18, 2021) (citing *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 614-15 (Del. 2003)).

[41]     *See* Rexcon Contract.

[42]     *Id.* (emphasis in original).

[43]     Rexcon claims that three other provisions demonstrate Heritage's ongoing contractual duties.  Rexcon avers that the Safety Devices provision establishes that Heritage accepted "the responsibility…to

10

However, in reviewing the Rexcon Contract as a whole, it is apparent that the main object of the agreement was a one-time purchase of component parts to construct the Plant. Rexcon argues the "must install and use" language in the Product Safety provision creates an ongoing contractual duty owed by Heritage. Under this reading, Heritage is obligated to install and use the products in safe a manner for an indefinite period. This interpretation does not comport with the full context of the Product Safety provision and the Rexcon Contract as a whole.

The Product Safety provision initially provides that Rexcon's products "are capable of being used in a safe manner, but [Rexcon] cannot warrant their safety under all circumstances."[44] The provision speaks in terms of limiting Rexcon's liability against potential third party suits sounding in products liability. Consistent with this understanding, the "must install and use" language serves to disclaim Rexcon's responsibility as to the use of its products after a sale. As a result, rejecting Rexcon's interpretation of the Rexcon Contract would not render the disputed provisions as mere surplusage.

Even if the Court were to accept Rexcon's contention that Heritage owed Rexcon contractual obligations to operate the Plant safely, the agreement would still fail to meet the *Precision Air* contractual indemnification exception. In *Precision Air*, the underlying contract provided in pertinent part, "[Precision] shall employ a competent foreman and any necessary employees during the progress of the Work,

furnish other appropriate safety devices which are desired by [Heritage] and/or required by OSHA Standards and other laws." *Id.* Rexcon further contends that the Electrical Equipment and Wiring provision provides that Heritage "is responsible for any disconnect switches or other devices required in addition to the main disconnect switch in the power panel." *Id.* Finally, Rexcon maintains that the Installation Supervision provision demonstrates that Heritage agreed to assemble and install all products purchased through the Rexcon Contract. *Id.*

44      *Id.*

11

so that the Work shall be done in a safe, good, substantial *and workmanlike manner*…"[45] Based on the explicit contract language, the Delaware Supreme Court determined that the employer agreed to perform services in a workmanlike manner.[46] Here, the Rexcon Contract does not expressly obligate Heritage to work in a workmanlike manner. Further, Rexcon offers no authority to support the contention that the "Product Safety" provision or any other provision, as written, amounts to a contractual obligation to work in a workmanlike manner. Nevertheless, the Rexcon Contract fails to meet the *Precision Air* exception for one additional reason—it lacks an express indemnification clause.

Rexcon argues that the parties agreed to an indemnification clause under the Remedy provision. Essentially, the provision limits Rexcon's liability solely to repairing or replacing component parts or refunding Heritage on claims brought within six months of product delivery.[47] Specifically, the Remedy provision provides, in relevant part:

> [Rexcon] will not be liable for any other [Heritage] costs, damages, or expenses that may result from a breach of this contract. The foregoing remedy is sole and exclusive and states the full extent of [Rexcon's] liability. *No other remedy will be allowed, whether in contract or tort (including strict liability and negligence).*[48]

In order to invoke the exception to the exclusivity provision, "[t]he intention to indemnify must … clearly appear in the terms of the [governing] agreement."[49] Nothing in this provision requires Heritage to indemnify Rexcon. The plain language reads as a limitation of Rexcon's liability. Contractual obligations limiting

---

[45]     *Precision Air*, 654 A.2d at 405.
[46]     *Id.* at 408.
[47]     *See* Rexcon Contract, Ex. 1 to Heritage's Motion to Dismiss
[48]     *Id.* (emphasis in original).
[49]     *Precision Air*, 654 A.2d at 407. (quoting *Howard, Needles, Tammen & Bergendoff v. Steers, Perini & Pomeroy*, 312 A.2d 621, 624 (Del. 1973)).

12

Rexcon's liability to the provided remedies do not and cannot obligate Heritage to indemnify and hold Rexcon harmless against claims from third parties. Because the Rexcon Contract does not establish a clear intent to indemnify, Rexcon cannot establish an express contractual indemnification claim as set forth in *Precision Air.*

Rexcon argued this "Remedy" provision does constitute an express indemnification clause because it is actually Heritage, not Hidinger, bringing the underlying negligence claim in this case. In support of this argument, Rexcon reasoned that Heritage, as a corporate entity, can only act through its employees and agents and Hidinger, as a Heritage employee who was injured within the scope of his employment, is an authorized agent of Heritage. Consequently, Rexcon asserts that Heritage, through its authorized agent (Hidinger), is asserting a negligence claim against Rexcon in violation of the "Remedy" provision. As a result, Rexcon claims that its limitation of liability provision "carries with it an obligation of Heritage to indemnify Rexcon." Rexcon's lone citation to authority to support its argument is to *Slover v. Fabtek, Inc.*,[50] which does not support this contention. However, even if true, the Rexcon Contract would still does not establish that Heritage is contractually obligated to indemnify Rexcon.

### 2. Implied Contractual Indemnification

In the alternative to its express contractual indemnification argument, Rexcon claims that the facts as set forth in its third-party complaint give rise to an implied indemnification claim. In doing so, it raises two theories of implied indemnification. First, it asserts that the "special relationship" test outlined in *Roy v. Star Chopper Co., Inc.*[51] operates as a basis for finding an implied indemnification obligation.

---

[50]     1985 WL 552281 (Del. Super. Ct. Mar. 4, 1985).
[51]     442 F.Supp. 1010 (D.R.I. 1997), *aff'd*, *Roy v. Star Chopper Co.*, 584 F.2d 1124 (1st Cir. 1978).

Second, Rexcon argues that one of the factual scenarios discussed in *Diamond State Telephone v. University of Delaware*[52] applies and gives rise to a claim for implied contractual indemnification.[53] In response, Heritage argues no such implied obligation can arise from a sales contract and contends the facts, as alleged, do not meet the "special relationship" test outlined in *Star Chopper*.

Delaware law recognizes that an implied contractual obligation to indemnify a third party may operate as an exception to Delaware's workers' compensation exclusivity scheme.[54] In *Diamond State*, the Delaware Supreme Court identified three factual scenarios which may give rise to a claim of implied contractual indemnification.[55] All scenarios contemplated by *Diamond State*, however, are conditioned on the existence of a contract whereby the employer performs services for the third party on the third party's premises.[56] Here, Rexcon fails to allege that Heritage performed services for Rexcon on Rexcon's premises.[57] As a result,

---

[52]    269 A.2d 252 (Del. 1970).

[53]    Rexcon raised this argument for the first time at oral argument. The Court permitted Heritage to supplement its response to address this claim, which they did on November 23, 2022. (D.I. 138).

[54]    *Karcher v. Restoration Guys, LLC*, 2022 WL 2720887, at *2 (Del. Super. Ct. July 14, 2022).

[55]    *Diamond State Tel. Co. v. Univ. of Del.*, 269 A.2d 52, 57-58 (Del. 1970).

[56]    *Id.* at 57 ("[a] possible liability in indemnification may come into existence if there is a contract between the third-party defendant and the third-party plaintiff for the performance of services by the third-party defendant on the premises of the third-party plaintiff."); *see also SW* (Del.), 450 A.2d at 890 ("the simple contract of sale between [employer] and [third party] does not give rise to an implied duty owed to [third party] by [employer] to install and use the machine in a workmanlike manner[.]").

[57]    *See generally* Rexcon Third-Party Compl.

Rexcon's third-party complaint does not trigger any of the factual circumstances contemplated by *Diamond State*.[58]

Rexcon further claims that it is entitled to implied indemnification under the special relationship test as set forth in *Star Chopper*. This Court has recently held that Delaware law does not recognize the special relationship test as an exception to workers' compensation exclusivity.[59] Even assuming Delaware does recognize the exception, this claim cannot survive. In *Star Chopper*, the United States District Court of the District of Rhode Island held that an implied indemnity obligation may arise if the relationship between the manufacturer and purchaser of a product is "more in the nature of co-manufacturers."[60] The *Star Chopper* court strictly confined its holding to the "unusual allegations and evidence before [it]."[61]

The *Star Chopper* court focused on three allegations that give rise to this special relationship. The Delaware Supreme Court summarized the findings as follows:

> The evidence of a special relationship included: (1) that the purchaser/employer imposed certain design specifications on the manufacturer which required the omission of certain safety devices normally placed on the machine; (2) that the purchaser/employer assumed full responsibility for the actual assembly of the unit of which the purchased machine was a part; and (3) that the purchaser/employer also assumed responsibility for the addition of any necessary safety devices upon the machine's final assembly at the plant.[62]

---

58    *See Farrow v. Teal Construction, Inc.*, 2020 WL 3422401, at *3 (Del. Super. Ct. June 22, 2020).

59    *Karcher*, 2022 WL 2720887, at *4 (finding "the Delaware Supreme Court did not adopt the [*Star Chopper*] exception.").

60    *Roy v. Star Chopper Co., Inc.*, 442 F.Supp. 1010, 1020 (D.R.I. 1977).

61    *Id.*

62    *SW (Del.)*, 450 A.2d at 890.

Here, Rexcon fails to meet the first prong of the special relationship test. Rexcon claims that Heritage's decision to use a Control Panel supplied by Alkon, instead of one available through Rexcon, imposed design changes to Rexcon's product.[63] The facts underlying *Star Chopper*, however, differ significantly. In *Star Chopper*, the manufacturer claimed that the employer-purchaser "was exclusively responsible for the design of the [allegedly defective product]."[64] Further, the manufacturer claimed, "it simply followed the detailed, complete designs imposed by its customer, [the employer-purchaser]."[65] The employer-purchaser's specifications omitted all safety mechanisms normally available on the product at issue.[66]

Here, Heritage's use of a separate Control Panel is distinguishable from the design specifications alleged in *Star Chopper*. A purchaser's mere input or modification alone cannot give rise to a co-manufacturer relationship significant enough to warrant the imposition of an implied indemnity obligation.[67] The *Star Chopper* court specifically noted its ruling was "narrowly confined" to the facts before it.[68]

The allegations in dispute more closely align with the facts in *Karcher v. Restoration Guys, LLC*. In *Karcher*, the employer-purchaser entered an agreement

---

[63]  *See* Rexcon's Opp'n. Br. at 17-18, Feb. 11, 2022 (D.I. 94).

[64]  *Star Chopper*, 442 F.Supp. at 1020.

[65]  *Id.*

[66]  *Id.*

[67]  *See Fehl v. J.W. Greer, Inc.*, 1981 WL 383065, at *2 (Del. Super. Ct. Aug. 6, 1981) (distinguishing *Star Chopper* and holding "a sales contract is not sufficient to establish that type of relationship from which an implied obligation to indemnify the third-party may arise.") (citation omitted); s*ee also* 11 Larson's Workers' Compensation Law § 121.08(4) (discussing lack of authority supporting implied indemnity obligations arising from sales contracts).

[68]  *Id.*

16

with a contractor to replace the entryway of employer-purchaser's storage facility.[69] The employer-purchaser specified the type of door it wanted and requested that the contractor build a three-to-four-inch curb to prevent water encroachment.[70]  The *Karcher* court held that purchaser-employer's specifications "did not create the type of special relationship that generated an implied duty of indemnification."[71] Establishing an implied indemnification duty on similar facts would "recognize an exception that would bypass exclusivity in nearly any circumstance where an employer gives a contractor specifications as to how it wants something built."[72]

Similarly, the Court finds that Heritage's request to use a different Control Panel to operate its Plant does not establish that it co-designed the component parts of the Plant.  These facts are far removed from a reasonable inference that Heritage was "exclusively responsible for the design" as was alleged in *Star Chopper*.[73] Accordingly, to the extent Delaware law recognizes the special relationship test at all, the Court declines to extend its application to the facts as alleged by Rexcon.

For the foregoing reasons, the Court **GRANTS** Heritage's Motion to Dismiss Rexcon's Third Party Complaint for failure to state a claim.

**B. Heritage's Motion to Dismiss Alkon's Third-Party Complaint.**

The issues and arguments before the Court in Heritage's Motion to Dismiss Alkon's Third-Party Complaint are substantially similar to the issues addressed above.

As previously mentioned, the Delaware Supreme Court in *Precision Air*, held that "[a]n employer, even though it has paid workmen's compensation benefits to an

---

[69]     *Karcher*, 2022 WL 2720887, at *1.
[70]     *Id.*
[71]     *Id.* at *4.
[72]     *Id.* at *5.
[73]     *Star Chopper*, 442 F.Supp. at 1020.

17

injured employee, can be held contractually liable to a third party where a contract between the employer and third party contains provisions requiring the employer to: (i) perform work in a workmanlike manner; **and** (ii) indemnify the third-party-indemnitee for any claims arising from the employer-indemnitor's own negligence."[74] This contractual indemnification exception may arise either through an express contractual obligation or an implied promise to indemnify.[75] Like Rexcon, Alkon argues that the Alkon Contract contains an express indemnification obligation, or in the alternative, the Court should recognize an implied promise to indemnify.

### 1. Express Contractual Indemnification

Alkon argues that the express terms found in the Alkon Contract establish that Heritage agreed to perform work in a workmanlike manner and that Heritage agreed to indemnify Alkon for Heritage's negligence. Heritage claims that the Alkon Contract offers no express language that requires Heritage to perform work in a workmanlike manner. As a result, Heritage contends that Alkon's express contractual indemnification claim fails as a matter of law.

Like the Rexcon Contract, the Alkon Contract contains no express provision for Heritage to perform work in a workmanlike manner. Nonetheless, Alkon contends that express obligations in the document "demonstrate that Heritage had a contractual duty to perform such work (i.e. the installation and operation of the Plant)

---

[74]     *Precision Air*, 654 A.2d at 407 (citing *SW (Del)*, 450 A.2d at 889-90)).
[75]     *SW (Del.)*, 450 A.2d at 888 ("a third-party tortfeasor may assert a claim for indemnification against the injured party's employer for the latter's breach of contract—*express or implied*—with the third party to perform in a careful and prudent manner, assuming the employer's breach of such duty was the actual cause of its employee's injury.") (emphasis added).

18

in a workmanlike manner."[76] Alkon relies on Sections 3.9.2 and 14.1 of the Master Agreement.

Section 3.9.2 notes that the installation of the Control Panel is Heritage's sole responsibility, while Section 14.1 disclaims Alkon's liability from any claims arising from Heritage's modification or attempted modification of the Control Panel and Heritage's negligence, among other circumstances.[77] Alkon claims that these provisions obligate Heritage to perform the installation work in a workmanlike manner. Once again, *Precision Air* is instructive. In that case, the court found that an express contractual obligation to perform work in a workmanlike manner existed because there was an explicit provision in the contract which said just that.[78] There is no such language here. Further, Alkon provides no legal authority to support its position that these contractual terms, when read together, warrant an express contractual obligation to perform work in a workmanlike manner.

While the parties agreed to certain indemnification provisions and limitations on Alkon's liability, the Alkon Contract does not obligate Heritage to perform work in a workmanlike manner. In the context of sales contract, this Court has held that the "duty to use the manufacturer's product in a safe and proper manner is a duty owed to the employee, not the manufacturer."[79] The same is true here; the Alkon Contract is distinguishable from the underlying contract in *Precision Air* and does not fall within the express contractual indemnification exception.

---

[76]    Alkon's Opp'n Br. at 10, Sept. 15, 2022 (D.I. 132).
[77]    Master Agreement § 3.9.2, 14.1.
[78]    *Precision Air*, 654 A.2d at 408.
[79]    *Fehl*, 1981 WL 383065, at *2 (citation omitted).

19

## 2. Implied Contractual Indemnification

In the alternative to its express contractual indemnification claim, Alkon contends that it is entitled to an implied contractual indemnification claim on two bases. First, Alkon contends that two of the three factual scenarios giving rise to an implied obligation to indemnify discussed in *Diamond State* are applicable to the facts as alleged here. Second, Alkon asserts that the special relationship test articulated in *Star Chopper* establishes the presence of an implied obligation to indemnify.

The factual scenarios set forth in *Diamond State* require a contract whereby the employer agrees to provide services to a third party on the third party's premises as a prerequisite to imposing an implied indemnification obligation.[80] Because the facts, as alleged by Alkon, fail to comport with the *Diamond State* factual scenarios, Alkon has failed to establish "a condition precedent to invoking the narrow exception."[81] Likewise, Alkon cannot meet the special relationship exception outlined in *Star Chopper*, to the extent Delaware law recognizes the exception.[82] As previously mentioned, the *Star Chopper* court focused on three allegations that give rise to this special relationship. The Delaware Supreme Court summarized the findings as follows:

> The evidence of a special relationship included: (1) that the purchaser/employer imposed certain design specifications on the manufacturer which required the omission of certain safety devices normally placed on the machine; (2) that the purchaser/employer assumed full responsibility for the actual assembly of the unit of which the purchased machine was a part;

---

[80]     *See Diamond State*, 269 A.2d at 57.

[81]     *Laugelle v. Bell Helicopter Textron, Inc.*, 88 A.3d 110, 120 (Del. Super. 2014).

[82]     *See Karcher*, 2022 WL 2720887, at \*4 ("the Delaware Supreme Court did not adopt the [*Star Chopper*] exception.").

20

and (3) that the purchaser/employer also assumed responsibility for the addition of any necessary safety devices upon the machine's final assembly at the plant.[83]

Here, Alkon argues that Heritage's request that Alkon provide a Control Panel based off a previous order does not establish that Heritage and Alkon were co-manufactures of the Control Panel. Finding an implied indemnification obligation based on these facts would "bypass exclusivity in nearly any circumstance where an employer gives a contractor specifications as to how it wants something built."[84] The facts as alleged here are not substantially similar to the underlying allegations in *Star Chopper*.[85] Moreover, Delaware authority has acknowledged that the exception to workers' compensation exclusivity is a "narrow" one.[86] Accordingly, to the extent that *Star Chopper* exception is recognized by Delaware law, the Court holds that it is inapplicable to the facts as alleged by Alkon.

As a result, the Court **GRANTS** Heritage's Motion to Dismiss Alkon's Third-Party Complaint.

## IV. CONCLUSION

For the reasons discussed above, Heritage's Motions to Dismiss both Rexcon and Alkon's Third-Party Complaint are **GRANTED**.

Danielle J. Brennan, Judge

---

[83] *SW (Del.)*, 450 A.2d at 890.
[84] *Karcher*, 2022 WL 2720887, at *5.
[85] *See Star Chopper*, 442 F.Supp. at 1020.
[86] *Laugelle*, 88 A.3d at 120.

21